### TAYLOR v. ROBINSON, Sheriff.

#### (District Court, N. D. Texas. March 31, 1888.)

TAXATION—TAXABLE PROPERTY—LAND HELD UNDER CONTRACT OF PURCHASE.
Under Rev. St. Tex. art. 4691, providing that whoever holds state lands under a contract of purchase, or under a lease for a term of three years, shall be considered, for the purposes of taxation, the owner of the same, one who contracts with a state to build for it a capitol, and, in payment, is given possession of state lands, under a contract which provides that he is to become the owner thereof in installments as the work progresses, the land being platted for that purpose, and which also provides that if he abandon his contract he is to pay rent upon that portion of the land which he has not then earned. is properly assessed before such abandonment, upon the unearned lands, as a holder under a contract of purchase.

In Equity. On bill for injunction.

The complainant, Abner Taylor, seeks to enjoin the defendant, J. M. Robinson, sheriff and tax collector of Oldham county, Tex., from collecting taxes assessed against him upon certain state lands which he holds under a contract of purchase.

*Rayland, Robertson & Coke,* for complainant.

*J. S. Hogg,* Atty. Gen., and *R. H. Harrison.* Asst. Atty. Gen., for defendant.

McCORMICK, J. The constitution of this state, art. 13, § 1, provides that "taxation shall be equal and uniform. All property in this state, whether owned by natural persons, or corporations, other than municipal, shall be taxed in proportion to its value: * * * provided, that two hundred and fifty dollars worth of household and kitchen furniture, belonging to each family in this state, shall be exempt from taxation. Sec. 2. * * * The legislature may, by general laws, exempt from taxation public property used for public purposes; actual places of religious worship; places of burial not held for private or corporate profit; all buildings used exclusively and owned by persons or associations of persons for school purposes, (and the necessary furniture of all schools;) and institutions of purely public charity. And all laws exempting property from taxation other than the property above mentioned shall be void." Article 4691, Rev. St. Tex., provides: "Property held under a lease for a term of three years or more, or held under a contract for the

purchase thereof, belonging to this state, * * * shall be considered, for all purposes of taxation, as the property of the person so holding the same." On the 18th day of January, 1882, one Matthias Schnell contracted with the state of Texas to build for said state a capitol building described in said contract, and to pay the sum of $20,000 to said state to reimburse the state for the incidental expenses theretofore incurred, chargeable to the account of the lands reserved for the capitol building, and to receive therefor said capitol lands, in certain installments, as the work progressed. This contract, agreeably to its terms, and with the consent or acquiescence of the proper state authorities, was assigned, and came in due course of such assignment, before the 25th day of July, 1885, to be held by the complainant. This contract contained no express provision as to the possession and use of said capitol lands prior to their being patented to the contractor under said contract. The lands had been surveyed and designated by plats, numbers, metes, and bounds, etc., and the counties named in which the surveys respectively were situated. There appears to have been a question as to the right of the contractor to use these capitol lands (3,000,000 acres) prior to their being patented to him. On the 25th day of July, 1885, a supplemental contract was entered into by the proper state authorities and complainant, by which, among other things, his right to use said lands and all of them (3,000,000 acres) from that date was fully recognized. This supplemental contract was in two parts, one relating to changes in the material and construction of the building, and the other to the holding of the capitol lands by the contractor. The one part contains this provision:

"It is expresly agreed and understood by and between the parties hereto that the lease of even date herewith, executed by the state of Texas, through its proper officers, and giving to the capitol contractor the absolute right of possession to the capitol lands, upon the conditions contained therein, is hereby made a part of this contract, as fully and expressly as if the same had been at length herein set forth, reference being thereto made for further particulars."

The other part contains these provisions:

"Said Taylor [complainant] is to pay six cents per acre per annum for said land, and is to execute a good and sufficient bond payable to the governor of the state of Texas, or to his successors in office, for the payment of said rental. If said Taylor or his assigns completes the building of said capitol according to contract, then no rent whatever is to be paid for said lands, said lands being then the property of said Taylor or his assigns, free from any claim on the part of the state for rent, as though this agreement had not been made. If said Taylor abandon his contract, or the same be terminated before the completion of said building, then he is to pay rent at the rate above mentioned for all lands which may not then have been earned by him."

So much of said capitol lands as are situated in Oldham county, and as had not been patented to complainant on the 1st day of January, 1886 and 1887, respectively, have been assessed for taxes as the property of complainant for those years; said assessment amounting in the aggregate to the sum of $9,464.69, which the defendant, as the bill alleges, is about to collect or threatening to collect by seizure and sale of complainant's

property. There is, substantially, no dispute as to the facts, and the question is not one of irregular or excessive assessment, (for relief against which, if such ground existed, this court would probably not be the proper tribunal,) but it is whether on the said 1st day of January, 1886 and 1887, the complainant had any taxable property in said lands; and it would seem that under the constitution of this state that question resolves itself into the question whether on the dates named the complainant had any property in said lands. But waiving this broader view of the question, which has been presented, and ably argued, and well supported by authority, in the printed brief submitted by the attorney general and the assistant attorney general of the state on behalf of the defendant, I will notice briefly the positions taken in the bill and earnestly pressed in the brief of complainant's solicitors. As stated in the brief these are: *First.* The complainant did not on January 1, 1886, or January 1, 1887, hold the unearned lands in Oldham county under a contract of purchase, within the meaning of article 4691, Rev. St. Tex. "*Second.* The complainant did not at either of said dates hold said lands, within the meaning of article 4691, under a lease for a term of three years or more." The state of Texas owns a great many sections of land, separated from the public domain and set apart for a permanent public school fund, and for other public charities. There have been, and are still, laws providing for the sale of these lands on long time, and for leasing such as are not sold for longer or shorter terms on conditions as to reserved rent and other particulars mentioned in the statutes. The section of the state constitution appropriating 3,000,000 acres of the public domain for the purpose of erecting a new state capitol, provided that said lands should be sold under the direction of the legislature, and that the legislature shall pass "suitable laws to carry this section into effect." The sixteenth legislature did pass laws for carrying this provision into effect, under which the lands were surveyed into leagues, (wherever practicable,) which were numbered and platted, and carefully described by fixed corners, metes and bounds, character of soil and water, and other features affecting value. These the capitol commissioners, under direction and with approval of the capitol board, were authorized to sell for money, or to contract to an accepted bidder for the erection of the capitol building, (as was done;) but no mention is made of any authority to lease all or any portion of the capitol lands in any act of the legislature that I have been able to find. There appears to have been authority in the counties to lease certain lands belonging to said counties for school purposes. And on the 12th April, 1883, (page 89, Sess. Acts,) provision was made for leasing certain of the lands set "apart for the benefit of the common school, university, the lunatic, blind, deaf and dumb, and orphan asylum funds;" and amended provisions have since been made in reference to these lands, all requiring some rental (and generally fixing a minimum) to be reserved. The complainant insists that he did not hold these lands under a lease for a term of three years or more, for that before the expiration of three years from the 25th day of July, 1885, he had earned said lands under his contract, and had received patents for

them. But if this fact shows that he did not hold said lands under a lease for a term of three years or more, does it not as clearly show that, as to these lands at least, there never was any lease at all, for that rent was only reserved on such lands as the contractor should not earn under his contract? Waiving, therefore, all question as to the authority of the capitol commissioners and capitol board to lease the capitol lands, (a question the defendant has not raised,) I am of opinion that the position is well taken by the complainant that he did not on the 1st day of January, 1886, or the 1st of January, 1887, hold these lands under a lease for a term of three years or more. He, however, did have actual possession of them, or a clear and undisputed right to the possession of them as against the state, on said dates, under a contract of some kind. Complainant insists that it was not under a contract of purchase, because the first contract did not expressly recognize his right to the possession of said lands, and the supplemental contract, which does so recognize his right, and under which he says he entered, uses the word "lease" in connection with his right to possess said lands, and his liability to pay rent for such as may not be earned under his contract; and because the acts of the legislature authorizing his contract do not anywhere in express terms refer to the capitol contractor as a purchaser of the lands. And by way of illustration and further argument suggests that if the contract to build the capitol had provided for payment in money, the contractor would not be considered as a purchaser of the money; that purchase embraces all manner of acquisition except inheritance, and in this sense a lessee is a purchaser, but that the term "purchase" is not used in this broad sense in article 4691, Rev. St. Tex. It is apparent that by "purchase" in said section is meant a contract to acquire the fee in the land. That, however, is the estate in the land for which the complainant did contract as to all the lands earned by him under his contract to erect the state capitol building. It can hardly be seriously urged that because the word "purchaser" or "purchase" is not used in the statutes or the contracts as descriptive of the contractor, said contractor, who binds himself in writing, mutually executed and delivered by him and the proper state authorities, to erect a specified building for certain clearly designated parcels of land, is therefore to be held as not acquiring or holding said lands after entry permitted and before patent under a contract for the purchase of said lands. I have already shown why, in my opinion, the term "lease" mentioned in the supplemental contract must be restricted to such lands, if there should be any such, as are never earned under said contract. It is misleading to say that, if payment in money had been contracted for, the contract could or would not have been construed as one for the purchase of the money The term "money" is used to designate the whole volume of the medium of exchange recognized by the custom of merchants and the laws of the country, just as the term "land" designates all real estate. If the contract in this case had been to erect the capitol building for land to the extent in value of $1,500,000, or to the extent in acres of 3,000,000, to be taken as it might be thereafter tendered out of the public domain, the analogy to a contract for pay in money would be

closer. · If the contract had been for payment in certain pieces of a defi-
nite kind of money, each piece marked and numbered, held at first by
the state, but to be delivered in a certain order,—that is, commencing
with a certain number, and continuing with the consecutive numbers,
in installments as the work progressed,—and afterwards, when the work
had considerably progressed, on the giving of satisfactory security, pos-
session of all the marked money was delivered to the contractor, provid-
ing that as he earned it in installments it should become his absolutely,
and that, if his contract should be abandoned or otherwise terminated
before he earned it all, then he was to pay interest at the rate of 6 per
cent. per annum for all the said moneys which may not then have been
earned by him, the analogy it seems to me would be perfect.    Then,
whether it ever became a loan (lease or renting) would depend upon
whether the contract was terminated before completion, because, if not,
the whole would have been earned, and no interest whatever be due for
said moneys, but the same would then be "the property of said Taylor
or his assigns, free from any claim on the part of the state for rent, (in-
terest,) as though this agreement (about the possession of the moneys)
had not been made."    It appears to me that the lands in question were
held by complainant in 1886 and 1887 under a contract for the pur-
chase thereof, and were and are subject to assessment for taxes for those
years, and that the motion for a preliminary injunction should be re-
fused.    And it is so ordered.