BRONS HOTELS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52116. Promulgated April 21, 1936.

*W. F. Mehrlich, Esq., Louis B. Montfort, Esq.,* and *E. L. Kohler, C. P. A.,* for the petitioner.

*E. A. Tonjes, Esq.,* for the respondent.

### OPINION.

MELLOTT: In this proceeding petitioner contests a deficiency in income tax determined by the respondent in the amount of $7,590.95 for the fiscal year ended May 31, 1928. The sole question presented for our determination is the amount of taxable gain to be recognized in connection with the transaction shown in the stipulation of facts filed before us, which is as follows:

### STIPULATION OF FACTS.

1. Petitioner is a corporation organized under the laws of the State of Illinois on June 5, 1925. Its principal place of business is 19 East Ohio Street, Chicago, Illinois.

2. Petitioner filed its corporation income tax return for the fiscal year ended May 31, 1928 with the Collector of Internal Revenue at Chicago, Illinois.

3. On June 5, 1925, petitioner acquired land and buildings at 1017–1021 North Dearborn Street, Chicago, Illinois, known as the Walton Hotel, in exchange for its entire capital stock of no par value.

4. At the time of its acquisition by the petitioner, the Walton Hotel was subject to a mortgage of $200,000.00, the payment of which mortgage was assumed by petitioner.

5. By November 1, 1927, the mortgage had been reduced to $181,666.62 by payments of $18,333.38 made by petitioner. The depreciated cost of the Walton Hotel on November 1, 1927 was $229,435.18.

6. On November 1, 1927, the Walton Hotel was exchanged by the petitioner for (a) land and buildings at Leland Avenue and Malden Street, Chicago, Illinois, known as the Leland-Malden Apartments, which had a fair market value of $100,000.00 at November 1, 1927, and (b) cash in the amount of $13,914.62; and as a part of the same transaction, the party with whom the petitioner made the exchange assumed (1) the payment of the balance due on the aforesaid mortgage amounting to $181,666.62, (2) the payment of certain liabilities of the Walton Hotel in the amount of $8,979.07 and (3) liability for certain advance rentals which had been collected by petitioner from tenants of the Walton Hotel in the amount of $14,731.43.

7. In the exchange, petitioner assumed liabilities of the owners of the Leland-Malden Apartments in the amount of $10,544.65. The Leland-Malden Apartments were clear of mortgages and encumbrances on November 1, 1927.

8. Respondent determined that the petitioner realized a profit of $79,311.91 on the foregoing exchange, arrived at as follows:

| | |
|---|---:|
| Cash received | $13,914.62 |
| Mortgage assumed by purchaser | 181,666.62 |
| Current liabilities assumed | 8,979.07 |
| Unamortized lease assumed by purchaser | 14,731.43 |
| Fair market value of apartment building received | 100,000.00 |
| Total received | $319,291.74 |

Less:
Cost of Walton Hotel and liabilities assumed by taxpayer:

| | | |
|---|---:|---:|
| Cost of land | $72,076.78 | |
| Building | $169,991.40 | |
| Less: | | |
| Depreciation | 12,633.00 | |
| | 157,358.40 | |
| Current liabilities assumed | 10,544.65 | |
| | | 239,979.83 |

| | |
|---|---:|
| Profit | 79,311.91 |
| Profit reported | 22,741.40 |
| Additional profit | $56,570.51 |

As inferentially appears from the stipulation, the deficiency results from the respondent's determination that the additional profit of $56,570.51 must be added to petitioner's taxable income, with the result that petitioner will pay a tax upon the entire profit realized by it.

The petitioner does not dispute the fact that its gain was $79,311.91. While it reported a taxable profit of $22,741.40 in its income tax return, it alleges in the petition filed before us that "the taxable gain * * * which properly should have been reported by (it) was not greater than $13,914.62, the amount of cash received."

Petitioner having filed its return upon the fiscal year basis, the Revenue Act of 1926 and the Revenue Act of 1928 are both applicable in determining the amount of tax due. (Sec. 105, Revenue Act of 1928.) The pertinent sections of both acts are, in all respects here important, either identical or substantially the same, so we shall cite and refer only to the provisions of the 1928 Act.

Petitioner relies upon section 112 (b) (1) and (c) (1), which is shown in the margin.[1] It argues that it merely exchanged an equity in one apartment hotel for an equity in another apartment hotel and that the taxation of any gain or profit—except only to the extent of the cash received—should be deferred until a sale is made of the property which it received in the exchange. While this contention upon first blush appears to be tenable, we are constrained to approve the respondent's determination of a deficiency and shall now briefly set forth our reasons for doing so.

Subsection (b) (1), *supra*, provides that no gain or loss shall be recognized if property held for investment is exchanged *solely* for property of a like kind to be held for investment. Since petitioner herein received money, the assumption of certain of its current liabilities, and the assumption of its obligation under the mortgage, in addition to property of a like kind, this subsection does not apply.

Both parties apparently recognize that only subsection (c) (1) can be applicable, for, upon brief, they confine their discussion to the treatment to be accorded the mortgage indebtedness of $181,-666.62 which was assumed by petitioner's transferee. This subsection, it will be noted, provides that if the exchange would be within the provisions of subsection (b) (1) were it not for the fact that the property received in exchange consists not only of property which might be received without the recognition of gain but also of other property *or* money (and we have emphasized the use of the disjunctive), then "the gain, if any, to the recipient *shall* be recognized."

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) *Exchanges solely in kind.*—

(1) PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

\* \* \* \* \* \* \*

(c) *Gain from exchanges not solely in kind.*—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

The parties agree that if the mortgage indebtedness is other property or money received in connection with the exchange, then the entire gain must be recognized, for the amount of the mortgage indebtedness is in excess of the gain.

Petitioner, as the owner of the Walton Hotel, was entitled to take—and required to take—as a "basis" for determining gain or loss upon the sale or other disposition of such property the cost thereof (sec. 113 (a)). When it acquired the property, it received, as part of its cost, the benefit of the mortgage which it assumed, although it actually acquired only an equity in the property. During the time it owned the property it was allowed depreciation on the improvements located thereon and not merely upon its equity in such improvements. Taxes paid upon the entire property, not merely upon its equity therein, have been allowed as deductions. It has been said that it is only equitable that, when relieved of the debt burden which it has been allowed to use as part of the cost, it should be deemed to have received cash equivalent in the passing on of that debt to its vendee. Of course, neither the administrative officers of the department nor this Board have equity powers; but as a mere abstraction the above statement undoubtedly is correct.

The parties have stipulated that the depreciated cost of the Walton Hotel on November 1, 1927, was $229,435.18. The amount due under the mortgage, or $181,666.62, is included therein. Petitioner's transferee assumed the payment of such indebtedness and such assumption was clearly part of the consideration received by petitioner. This is the view generally taken by the courts (cf. *United States* v. *Boston & Maine Railroad Co.*, 279 U. S. 732; *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716); it is the method used in ordinary accounting, and is the method specifically recognized by the respondent's regulations and general administrative practice. Thus it is said in article 69, Regulations 74: "If the purchaser takes over all the assets and assumes the liabilities, the amount so assumed is part of the selling price."

As stated above, petitioner recognizes that the assumption of the indebtedness is part of the consideration. It does not question the respondent's method of computing the gain. It merely relies upon and contends for a literal, rather than a practical, interpretation of subsection (c) (1). It contends that the assumption of the indebtedness is not *money* and that it is not *other property*. Though it filed an extended brief, it does not attempt to enlighten us as to what it is. Clearly, it is something of value and was so considered by the parties in making the exchange. Indeed, petitioner tacitly affirms that it is a valuable right by alleging that "the mortgage assumed by the pur-

chaser * * * had a fair market value of not more than 75 percent of its face value." This is clearly tantamount to an admission of *some* value.

The respondent has treated the assumption of the liabilities and the mortgage as the equivalent of money and such treatment is in accord with his prior rulings (G. C. M. 2641, VI–2 C.B. 16, and G. C. M. 4935, VII–2 C.B. 112). Presumptively, the deficiency determined by him should stand. Upon petitioner rests the burden of overcoming such presumption. We are of the opinion that it has failed to do so, or to show that the respondent erred in determining the deficiency. A reference to other sections of the revenue act, we believe, will show not only that the respondent is correct, but will show also the fallaciousness of petitioner's contention.

Section 113 (a) (6) shown in the margin,[2] outlines the method for determining the basis for gain or loss upon a sale by petitioner of the property which it acquired in exchange, namely the Leland-Malden Apartments. Applying that section under petitioner's theory of the treatment to be accorded the debts assumed, the basis of such property in the hands of petitioner would be computed as follows:

Basis—"same as in the case of the property exchanged" (Walton
  Hotel) _____ $229,435.18
"Decreased in the amount of any money received by the taxpayer"__ 13,914.62

                                                   215,520.56
"Increased in the amount of gain that was recognized upon such
  exchange" _____ 13,914.62

      Basis of Leland-Malden Apartments_____ 229,435.18

Applying section 113 (a) under respondent's theory, and treating the assumption of the mortgage indebtedness as money, the basis for gain or loss upon a subsequent sale of the Leland-Malden Apartments by petitioner would be computed as follows:

---

[2] SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

    *         *         *         *         *         *         *

    (6) TAX-FREE EXCHANGE GENERALLY.—If the property was acquired upon an exchange described in section 112 (b) to (e), inclusive, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by section 112 (b) to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.

Basis of property exchanged:
. Depreciated cost of Walton Hotel_____ $229, 435. 18
Deduct:
   Cash_____ $13, 914. 62
   Mortgage_____ 181, 666. 62
Net liabilities_____ $8, 979. 07
                      14, 731. 43

                      23, 710. 50
Less _____ 10, 544. 65
                             13, 165. 85  208, 747. 09

                                       20, 688. 09
Add gain recognized_____. 79,,311. 91

Basis of Leland-Malden Apartments_____ 100, 000. 00

We are not unmindful of the fact that the assumption of a mortgage is not money in a true legal sense. It is, however, part of the consideration received; it is the equivalent of money, and in our opinion must be treated as money for the purposes of this case.

It is a cardinal principle that in construing a statute the intention of the law-making body should prevail and, if a literal interpretation of a part of a statute operates unjustly or leads to absurd results, or is contrary to the evident meaning of the act taken as a whole, it should be rejected (*Hawaii* v. *Mankichi*, 190 U. S. 197, 212; *United States* v. *Baltimore Post Co.*, 2 Fed. (2d) 761).

Taxation is a highly practical matter. The revenue act must be construed as a whole, and a sensible construction, one which will effectuate the legislative intention, should be given (*In re Chapman*, 166 U. S. 661). The various sections of the act should be so construed that one section will explain and support and not defeat or destroy another section (*Bernier* v. *Bernier*, 147 U. S. 242). Cf. *Wright & Taylor* v. *Lucas*, 45 Fed. (2d) 75; affd., 282 U. S. 409.

The computation shown above demonstrates the fallaciousness of petitioner's contention and the reasonableness—and we believe—the correctness, of the view that the assumption of the mortgage indebtedness must be treated as money. If the property received by the petitioner in the exchange has in its hands a basis of $229,435.18 for computing gain or loss upon a subsequent sale, it is entirely probable that petitioner *will never* pay any tax upon the gain realized. On the contrary, petitioner would probably actually take a loss deduction, for under section 111 of the Revenue Act of 1928 (which section has continued under succeeding acts) the gain from the sale or other disposition of property is the excess of the amount

realized therefrom over the basis provided in section 113 and the loss is the excess of such basis over the amount realized. If, therefore, petitioner subsequently sells the Leland-Malden Apartments— which has a fair market value of $100,000—for less than $229,435.18, the basis under its theory, then it would be entitled to take a loss deduction when in truth and in fact it not only suffered no actual loss but realized a substantial gain. Clearly, Congress never intended such an anomalous result.

We believe that it is eminently fair to the petitioner, as well as to the Government, to treat the assumption of the mortgage indebtedness as money received and thereby to give the petitioner as a basis for gain or loss upon the subsequent sale the actual and stipulated fair market value of the property received in exchange, namely, $100,000. If this amount becomes the basis, as it does under the method which we have approved, then upon such basis exhaustion, wear and tear, depreciation and obsolescence will be allowed as provided in section 114.

It is our conclusion that the assumption of the mortgage indebtedness must be treated as money within the provisions of section 112 (c) (1), *supra*, and the corresponding section of the 1926 Act. No alternative solution has been suggested which does not do violence to some express statutory provision. Cf. *Lucas* v. *Schneider*, 47 Fed. (2d) 1006; certiorari denied, 284 U. S. 622; *Fawsett* v. *Commissioner*, 63 Fed. (2d) 445, affirming 23 B. T. A. 1148; certiorari denied, 290 U. S. 641.

In so far as *Fashion Center Building Co.*, 31 B. T. A. 167, is in conflict with the conclusion herein reached, it will no longer be followed.

It follows that the entire gain must be recognized for the purpose of taxation during the taxable year and that respondent did not err in determining the deficiency.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

ARUNDELL, dissenting: If the word "money" as used in section 203 (c) (1) of the Revenue Act of 1926 and the corresponding section of the Revenue Act of 1928 is to be given its accepted meaning, the assumption of a mortgage on purchased property certainly does not fall within it. Webster's New International Dictionary defines the word "money" as follows: "In a comprehensive sense, anything customarily used as a medium of exchange and measure of value." In *State* v. *Finnegean*, 127 Iowa, 286; 103 N. W. 155, the word "money"

is defined as "anything that circulates as the ordinary medium of exchange in buying and selling property", and in *Taylor* v. *Robinson*, 34 Fed. 678, 681, the word is defined as "the whole volume of the medium of exchange recognized by the custom of merchants and the laws of the country." In the instant case, the assumption of the mortgage does not serve to release any assets of the petitioner, as in *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, for the mortgage runs with the land and when the purchaser pays it off, he improves his own financial condition and not that of the seller. Nor can it be said that the assumption of a mortgage constitutes other property having a fair market value within the meaning of the revenue act. *Fashion Center Building Co.*, 31 B. T. A. 167.

The argument contained in the majority opinion is, as I understand. it, that, while the assumption of a mortgage is not money in its true sense, nevertheless it will be so treated because to do otherwise would result in part of the gain from the exchange going altogether untaxed because the formula for determining the basis for property received in a tax-free exchange (sec. 113 (a) (6)) does not in terms provide for reduction of the basis by amounts such as the value of the mortgage here assumed, which are properly returns of a part of the transferor's cost. Even if the difficulty be a genuine one, I do not think the Board is warranted in completely disregarding the plain language of the statute. However, in my opinion, the basis section can be so interpreted as to avoid this difficulty. The basis prescribed for property received in tax-free exchanges, namely, "the same as in the case of property exchanged" can, I think, with perfect reasonableness be held to mean the cost to the transferor less any return of cost which he has received as by the assumption of the mortgage in the present case; the basis will then be adjusted for recognized gain or loss as prescribed. This solution, I think, more nearly effectuates the intent of Congress and does less violence to the statutes than does the holding in the majority opinion.

The provisions of the several revenue acts with which we are here concerned were designed to facilitate business adjustments without the present imposition of a tax and they recognize that the tax should not be imposed until the seller receives money or property having a fair market value which the law regards as the equivalent of cash. Cf. S. Rept. No. 398, p. 17, 68th Cong., 1st sess.

VAN FOSSAN, MCMAHON, MATTHEWS, LEECH, and ARNOLD agree with this dissent.