[No. 27732. Department One. April 25, 1940.]

D. A. McDOUGALL et al., *Appellants,* v. MARY E. HEPDEN, *Individually and as Executrix, Respondent.*[1]

[1]Reported in 101 P. (2d) 570.

604

*P. O. D. Vedova, Paul E. Malone,* and *W. Ward Fearnside,* for appellants.

*Lundin & Barto,* for respondent.

MILLARD, J.—D. A. McDougall and James Hepden each owned fifty per cent of the capital stock of Mc-Dougall, Hepden and Boden, Incorporated, a domestic corporation which maintained a business at 207 First avenue south, Seattle, for a number of years, consisting of a restaurant, a bar at which the corporation was authorized to sell wine and beer, a card room, and an employment agency. It was the practice of the corporation to lend money to loggers, for which those borrowers would sign an "I. O. U.," which was carried by the corporation as cash. At times, the men would leave money with the corporation for safe-keeping.

In 1928, shortly after McDougall and Hepden be-

came equal owners of the stock of the corporation, one John Boden entered into a contract with them to purchase one-third of their stock on a conditional sale contract. He never made any payments, hence never acquired ownership of any stock, but his name was added to the corporate name, and he commenced to work for the corporation with McDougall and Hepden. The business was corporate in form, but it was administered in a manner savoring of a partnership. No dividends were paid. The profits were divided whenever they accumulated. Boden was not a stockholder, yet for the nine years he worked with McDougall and Hepden he regularly received one-third of the profits. In 1929 and 1930, the three men divided profits of from twenty-five thousand dollars to thirty thousand dollars.

It was agreed from the beginning that McDougall's work would be confined to the running of the employment part of the corporation, that Hepden would devote himself to keeping the books, and that Boden would work as a handy man and fill in wherever help was necessary. Up to August 1, 1936, Hepden kept a journal or day book, in which all of the receipts and disbursements of the corporation were entered. At the end of each day, McDougall would hand to him the commissions collected for employment services during the day, and Hepden would enter them in the day book under a special column entitled "Employment Receipts." A bookkeeper was employed to post the ledger from this day book.

On August 1, 1936, McDougall was employed by Weyerhaeuser Timber Company to conduct the timber company's employment office. From August 1, 1936, to March 1, 1938, the period for which an accounting is sought, McDougall was employed by the timber company. However, he continued to work evenings with the McDougall, Hepden and Boden corporation. His

interest in the business of his corporation was not restricted to his presence there each evening and often during the day. He employed a Mr. Miller to look after his interests in the corporation. There is testimony that he subsequently employed a Mr. Brown and a Mr. Kehrer for that purpose. From August 1, 1936, when McDougall commenced to work for the Weyerhaeuser Timber Company, the profits of the entire business continued to be equally divided between him, Hepden, and Boden, as had been the case before McDougall took over the employment department of the timber company.

In December, 1937, McDougall became suspicious and consulted counsel respecting the protection of his interests. As a result of that consultation, McDougall decided to seek an accounting and to withdraw from the business.

In March, 1938, McDougall instituted an action, alleging he was vice-president, trustee, and manager of McDougall, Hepden and Boden corporation, and that he owned one-half of the capital stock of that corporation. He further alleged that the corporation was insolvent, that the directors were divided, the voting power of the shareholders was equally divided, and that Hepden had appropriated to himself large sums of money. The prayer was that defendant James Hepden be required to account to the corporation for all transactions and business conducted by him from the time the business of the corporation had been conducted by Hepden; that a receiver be appointed for the corporation, and that the corporation be dissolved after payment of all just claims and distribution of the remaining assets of the corporation. McDougall made the corporation a party plaintiff with himself, instead of a party defendant.

A receiver was appointed for the corporation. Mc-

Dougall put in his claim with the receiver for four hundred dollars, representing money advanced by him on behalf of the corporation to John Davis & Company for rental of the premises occupied by the corporation. On April 4, 1938, the receiver sold the business and premises and the goodwill to James Hepden for $5,500. The claim of McDougall and all other claims of the creditors of the corporation were paid, and the balance remaining in the hands of the receiver after payment of all of the debts of the corporation was disbursed equally to the then owners of all of the stock of the corporation, McDougall and Hepden, each receiving $229.54.

Approximately three months later, when McDougall brought on for hearing his purported action for an accounting, he was granted further time in which to permit an accountant to examine the books of the corporation for the purpose of eliciting evidence which would warrant an accounting. The books were, as counsel for McDougall stated, "in very bad shape, and it was very difficult, as probably Mr. Barto has discovered, to make head or tail of it, but we did the best we could."

The books disclosed a certain amount of cash on hand at the time of the appointment of the receiver, when the fact was, according to the uncontroverted report of the receiver, that there was no cash. The checks introduced in evidence showed two signatures were required to withdraw the money from the bank. There is evidence that the money represented by the checks was spent in paying the bills of the corporation; that Hepden did not keep any books except the daily reports and a day book; that, when McDougall went to work for the Weyerhaeuser Timber Company, August 1, 1936, Mr. Boden's daughter also worked on the books;

and that deposits were made by Hepden, Boden, and occasionally by McDougall.

It was the theory of counsel for McDougall that, admitting the employment checks amounting to more than four thousand dollars were deposited in the corporation's account, someone had withdrawn an equal amount of money from the cash box of the corporation. There is no evidence to support that theory, nor is there any evidence in refutation of the testimony of Hepden that the money represented by the checks was expended in payment of the bills against the corporation. McDougall testified that probably six or seven persons had access to the cash register. McDougall removed more than $490 from the employment box in the safe. He admitted he took or borrowed for his own use $310, but could not remember whether it was in checks or cash. He explained that it was only a case of borrowing the money for a few days.

Boden, a witness for McDougall, testified that, during the ten years he was employed by the corporation, he could not say that he ever found any discrepancies in the accounts of Hepden or any items that Hepden had appropriated for himself. McDougall testified that he had had access to the books of the corporation at all times; that there were no sources of information available to a referee who would be making the accounting that were not available or accessible to him or to Mr. Hepden. He thought the books kept by Mr. Beattie, who had been the bookkeeper for ten years, were all right, but the only question in his mind was how the checks in excess of four thousand dollars from the employment came into the business without being entered on the books. Bookkeeper Beattie testified that no one ever claimed any shortage of cash or shortage of the bank account; that the bank account was correct.

At the conclusion of the second hearing, the trial

court urged that the parties make some kind of a settlement. In accordance with that suggestion, James Hepden made an offer, without prejudice, which was refused. On March 16, 1938, respondent's present counsel were substituted for the counsel who tried the case for defendant Hepden and wife. James Hepden died December 26, 1938, whereupon McDougall moved to substitute Mary E. Hepden, executrix of the estate of James Hepden, in place of James Hepden as a party defendant.

Mary E. Hepden, as executrix of the estate of her deceased husband, objected through her present counsel on January 13, 1939, to the motion for substitution, on the grounds that McDougall is estopped and his cause of action barred for the reason that he filed a claim with the receiver appointed in this cause and made no claim or contention therein such as he now urges, and that he is guilty of laches in that he did not take any action to cause the receiver appointed by the court to bring any action as he is now pressing. Further grounds for her objection to the motion for substitution were that the court appointed a receiver, therefore any claim against a stockholder or director must be brought by the receiver; and that, as the court discharged the receiver, that action is final and binding upon the parties and no cause of action survives to McDougall; that McDougall cannot avail himself of the equity powers of this court, in that he does not come into the court with clean hands—on his own admission, he wrongfully and illegally took two checks belonging to the corporation and appropriated them to his own use; that McDougall alleges in his original complaint that he is the manager of the corporation, and in that capacity and as director of the corporation he is legally liable for

any losses of the corporation of the nature he now alleges; and that no order of dissolution can be entered until the certificate of the state tax commission has been furnished as required by chapter 180, Laws of 1935, p. 706. McDougall's motion for substitution of Mary E. Hepden, executrix, as a party defendant was granted.

After hearing, the trial court entered a decree denying an accounting for the reasons (1) that the books of account and records of the corporation are so incomplete that to direct an accounting would be of no avail; (2) that the condition of said books of account and of the records of the corporation is partially chargeable to the negligence of McDougall in the performance of his duties as an officer of the corporation; (3) that McDougall is guilty of laches in permitting the receiver to be discharged without requiring the receiver to demand an accounting by James E. Hepden; and (4) that "McDougall, by his act, fails to comply with the equitable maxim, 'He who comes into equity must come with clean hands.' "

The action was dismissed as to Mary Hepden independently and as executrix of the estate of her deceased husband. It was further decreed that jurisdiction be retained by the court to dissolve the corporation; and that, after notice to the state tax commission shall have been given in the manner prescribed by law, all necessary action be taken for the dissolution of the corporation, that then an order be entered herein dissolving McDougall, Hepden, and Boden, Inc., a corporation.

D. A. McDougall has appealed.

This action was instituted by appellant McDougall under Rem. Rev. Stat. (Sup.), § 3803-50 [P. C. § 4592-80], reading as follows:

"The court may, upon petition being filed, entertain proceedings for the involuntary dissolution of a corporation when it is made to appear

"a. that the corporate assets are insufficient to pay all just demands for which the corporation is liable or to afford reasonable security to those who may deal with it; or

"b. that the objects of the corporation have wholly failed, or are entirely abandoned or their accomplishment is impracticable; or

"c. that it is beneficial to the interests of the shareholders that the corporation should be wound up and dissolved; or

"d. that the number of directors is even and they are equally divided respecting the management of the corporate affairs, and, when the voting power of all shareholders is equally divided into two independent ownerships or interests, and one-half thereof favor the course of part of the directors and one-half favor the course of the other directors, or the holders of such equal parts of the voting power are unable to agree on the election of the board of directors consisting of an uneven number." Laws of 1933, chapter 185, p. 808, § 50.

In his petition, McDougall alleged that he was manager of the corporation, that the corporation was insolvent, that the number of directors was even and they were equally divided respecting the management of the corporation's affairs; that the voting power of the stockholders was equally divided into two independent ownerships or interests, that one-half favored the course on the part of the one director and stockholder and the other half favored the course on the part of the other director and stockholder. It will be remembered that McDougall owned one-half of the capital stock and that Hepden owned the other half.

Under the situation as described in the petition of McDougall, it is clear that the corporation could not

612

take any action. It could not institute any action, as its directors were evenly divided.

■ A shareholder, under Rem. Rev. Stat. (Sup.), § 3803-51 [P. C. § 4592-81] (Laws of 1933, chapter 185, p. 809, § 51), has a right to file a petition, as McDougall did, for involuntary proceedings for dissolution of the corporation. Of course, McDougall should have joined the corporation as a party defendant, not as a party plaintiff.

Under his own allegations, McDougall had no right to institute a proceeding in the corporation's name, in view of the divided authority as to the directors and stockholders. Upon the filing of the petition for dissolution of the corporation, the authority of the corporation's directors and officers, under the provisions of Rem. Rev. Stat. (Sup), § 3803-56 [P. C. § 4592-86] (Laws of 1933, chapter 185, p. 811, § 56), shall cease except in so far as may be necessary to preserve the corporate assets, or in so far as they may be continued by the trustee or receiver, or as may be necessary for the calling for meetings of shareholders. Any subsequent action must be by a trustee or receiver of the corporation. Rem. Rev. Stat. (Sup.), §§ 3803-52 and 3803-53 [P. C. §§ 4592-82, 4592-83] (Laws of 1933, chapter 185, pp. 809, 810, §§ 52, 53). Trustees or receivers in dissolution proceedings are vested with full authority under Rem. Rev. Stat. (Sup.), § 3803-54 [P. C. § 4592-84] (Laws of 1933, chapter 185, p. 810, § 54), to liquidate the affairs of the corporation, and a stockholder or director of the corporation is without right or authority to prosecute an action for an accounting against a stockholder.

■ In the case at bar, the receivership was, in fact, general, and the receiver was appointed to take possession of all the property of every character and description. Everything became assets in that receiver's hands

which were assets as to creditors, although not as to the corporation, including capital withdrawn without provision for payment of corporate debts. *Fernald v. Spokane & B. C. Tel. & Tel. Co.*, 31 Wash. 219, 71 Pac. 731.

■ This action is one that was commenced by McDougall individually against the corporation and against Hepden and wife as parties defendant. When Hepden died and his executrix was substituted in his place as a party defendant, the action abated. An action for an accounting on the part of an individual stockholder does not survive against the representative of the deceased who was a director of the corporation.

"Indeed a bill for an accounting, in the absence of complications or of fiduciary relations between the parties, does not lie unless each of the two parties has received and paid on the other's account. *Phillips v. Phillips* [9 Hare 471], *supra. Hemings v. Pugh*, 4 Giff. 456. *Pratt v. Tuttle*, 136 Mass. 233.

"It may be conceded that the relation which the treasurer and directors of a corporation bear to it is fiduciary, and that an action to recover money or property misappropriated survives to the corporation; *Von Arnim v. American Tube Works*, 188 Mass. 515; *United Zinc Companies v. Harwood*, 216 Mass. 474, 476; but we are unable to find any authority for the position that that relation to the corporation extends to individual stockholders." *Lee v. Fisk*, 222 Mass. 424, 109 N. E. 835.

■ When the receiver was appointed, McDougall put in his claim for only four hundred dollars, which was the amount of money he advanced on behalf of the corporation to pay rental of the premises occupied by the corporation. The receiver sold the business, premises, and the goodwill to Hepden for $5,500. McDougall's claims and the claims of all of the creditors of the corporation were paid from that fund and without objection on the part of McDougall, who ac-

cepted, after payment of the creditors, one-half ($229.54) of the balance of the $5,500 remaining in the hands of the receiver, which was the same amount ($229.54) that was paid to Hepden. This constituted an actual accounting by the parties. McDougall did not demand that the receiver of the corporation, the only proper party, institute an action against Hepden, but he permitted Hepden to pay $5,500 for the business, and he received his one-half of the balance from the receiver without registering any objection whatever.

The rule, which is well settled and applicable to the facts in the case at bar, is that, where a party with full knowledge of the facts participates (as McDougall did) in a judicial proceeding without objection, he is bound by such proceeding.

It is unnecessary to review *in extenso* the history of the ancient common law action of account or account rendered, or to discuss the failure of appellant McDougall to come into equity with clean hands, or to emphasize the fact that the condition of the books of accounts and records of the corporation is partially chargeable to the negligence of McDougall in the performance of his duties as an officer of the corporation.

The judgment is affirmed.

MAIN, ROBINSON, and SIMPSON, JJ., concur.

BLAKE, C. J., concurs in the result.