GENSINGER

v.

COMMISSIONER OF INTERNAL
REVENUE.

No. 13605.

United States Court of Appeals,
Ninth Circuit.

Nov. 30, 1953.

Jones, Birdseye & Grey, A. R. Kehoe, Seattle, Wash., for appellant.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Robert B. Ross, Sp. Assts. to Atty. Gen., Charles W. Davis, Chief Counsel, Bureau of Internal Revenue, Washington, D. C., Alonzo Watson, Jr., Sp. Asst. to Atty. Gen., Washington, D. C., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

This is a petition to review a decision of the Tax Court holding that the taxpayer, E. D. Gensinger, is liable as transferee of the assets of Columbia River Orchards, Inc., herein the corporation, for deficiencies in income taxes, excess profits taxes and declared value excess profits taxes of that corporation in the aggregate amount of $103,571.06 for the taxable year 1943.

The principal question before us is whether the proceeds of certain sales of fruit in 1943 were income of the corporation. The taxpayer's contention is that he sold the fruit after receiving it from the corporation as a liquidating dividend and that the proceeds were therefore not taxable to the corporation.

We shall sketch the facts only in broad outline, as they are fully set out in the Tax Court's opinion. See 18 T.C. 122. The taxpayer was the sole shareholder of the Washington corporation except for two qualifying shares held by his wife who was a director. The corporation produced cherries, apricots and peaches on its farm near Wenatchee, Washington. The taxpayer owned some orchard land individually. Both the corporation, and the taxpayer had membership contracts with a local cooperative marketing association, known as Ninth Street Skookum Growers, Inc., herein Skookum, for the marketing of their crops. The practice of Skookum was to receive, grade, commingle and sell the fruit of its members and distribute to them their aliquot shares of the proceeds.

On May 13, 1943 the taxpayer and his wife adopted a resolution that the corporation be dissolved, that the taxpayer be appointed trustee in dissolution, and that the assets be distributed in kind to the shareholders, who were to assume the corporate liabilities. This resolution was not filed as required by a Washington statute and was apparently not intended to have any immediate effect, but only to set out the plans for a liquidation which was contemplated for the near future. July 7, 1943 was the date fixed for commencement of dissolution proceedings. A resolution for that purpose was not adopted until July 17 because of delay by the taxpayer's attorney in drafting it. This resolution named the taxpayer as trustee in dissolution and was filed in accordance with state law on July 20, 1943.

The cherry crop of the corporation was delivered to Skookum at some time prior to July 2, 1943. The apricot crop was delivered between July 7 and July 18, 1943. Prior to the delivery of the apricot crop the taxpayer advised skookum that the corporation was to be dissolved and directed that the apricot and subsequent crops from the corporate lands be handled for his individual account. Between July 22 and August 19, 1943 Skookum paid the proceeds of the sale of the cherry and apricot crops to the Regional Agricultural Credit Corporation (RACC), which had financed the operations both of the corporation and the taxpayer individually. The peach crop was delivered to Skookum and sold by it between September 7 and October 13, 1943. The record does not show to whom these proceeds were paid.

On October 11, 1943 the taxpayer, as trustee in dissolution, executed a deed transferring to himself as a shareholder the lands of the corporation and its production equipment. The existence of the corporation was terminated the following year (on May 24, 1944) with the filing of a final certificate of dissolution with the Secretary of State of Washington.

The problem here is *not* whether negotiation by a corporation for a sale of its assets, followed by the formality of a distribution in kind and a shareholders' sale, motivated solely by a purpose to avoid a tax to the corporation, is in substance a sale by the corporation, as in Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251. Nor are we here concerned with an attempt of a going concern to avoid a tax on the sales of its products by the ritual of a paper

transfer of such products to shareholders as dividends, followed by sales of such products in the ordinary course of the corporation's business, as in United States v. Lynch, 9 Cir., 192 F.2d 718. Here the taxpayer for some time intended to dissolve the corporation and thereafter carry on the business as an individual. If pursuant to this long-avowed intention the crops in question were distributed to the taxpayer in the course of liquidation, the circumstances afford no occasion to disregard the form of the transaction and impute subsequent sales of the fruit to the corporation. Cf. Wurtsbaugh v. Commissioner of Internal Revenue, 5 Cir., 187 F.2d 975. The problem here is simply whether the distribution was made.

■ The taxpayer argues that the resolutions of May 31 and July 17, in themselves, worked a complete and final dissolution of the corporation and that title to the corporate assets thereupon vested automatically in the taxpayer as sole shareholder. We think not. We agree with the Tax Court that the resolutions had no such effect under the laws of Washington, Rem.Rev.Stat. § 3803–48 et seq., and that they were clearly not intended to effect a present distribution of all the corporate assets. There remain, however, more difficult questions as to whether there was a distribution of the crops.

■ The appointment of the taxpayer as trustee in dissolution was effective on July 20, 1943, when the July 17 resolution was filed. Rem.Rev.Stat. § 3803–49. The taxpayer thereby obtained sole and complete control of the corporate assets for purposes of winding up, with power to sell such assets or to distribute them to himself as sole shareholder. See Rem. Rev.Stat. §§ 3803–52, 3803–56(2) (a); McDougall v. Hepden, 3 Wash.2d 603, 101 P.2d 570.

■ On July 20, the cherry crop of the corporation had already been sold by Skookum. This crop had never been distributed to the taxpayer and there is no evidence that any such distribution was ever intended. The proceeds of the sale of this crop, then, were clearly income of the corporation, as the Tax Court found.

This leaves for consideration the apricot and peach crops of the corporation. The Tax Court held that the taxpayer *could not* have distributed the apricot crop to himself. The rationale was, first, that debts of the corporation to the RACC persisted until they were discharged by payment to the RACC of the proceeds of the apricot sales in August of 1943, and that state law prohibited the taxpayer from distributing any assets to himself until all corporate debts were paid.

■ The taxpayer contends that the Tax Court erred in finding that the corporation had debts outstanding until August of 1943. We agree. In paragraph IV of his petition in the court below the taxpayer set out 57 allegations of fact taken almost verbatim from the findings of the Tax Court in an earlier proceeding involving these same parties and substantially the same issues. See 15 T.C. 253. Among these was the allegation that "all corporate obligations were paid on or before July 15, 1943." Contrary to the taxpayer's contention, the finding to that effect in the prior case was not *res judicata,* since the earlier proceeding was dismissed for want of jurisdiction and the finding was wholly unnecessary to the decision. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 598, 68 S.Ct. 715, 92 L.Ed. 898; Cromwell v. Sac County, 94 U.S. 351, 352–353, 24 L. Ed. 681.

■ However the Commissioner, in his answer, unequivocally admitted the 57 allegations contained in paragraph IV of the petition, including the allegation above quoted. The taxpayer stressed this admission in his opening statement in the court below and at no point in the course of the following trial was the question of the existence of corporate debts touched upon. It is true that the record of the prior case, which dealt generally with the subject of the debts owed to the RACC, was by stipulation made a part

of the record in the instant case, but the earlier proceeding involved several questions not present here. The record of that proceeding was not introduced for the purpose of raising questions closed by the pleadings in this case.

■■ The allegation quoted was certainly not so incredible as to justify the Tax Court in *ignoring* the Commissioner's flat admission of it. It was supported by the testimony of the taxpayer's accountant in the prior proceeding. The Tax Court inferred that the debts discharged by payment of the proceeds of the cherry and apricot crops to the RACC were debts of the corporation. But that inference is by no means inevitable, for the RACC had financed the operations both of the corporation and the taxpayer individually. There is no evidence as to whether the debts to the RACC were owed by the taxpayer individually or by the corporation. The taxpayer had a right to rely upon the Commissioner's admission, and the record indicates that he did so. We think it was settled on the

pleadings that all corporate obligations were paid on or before July 15, 1943, and that the Tax Court was bound to so find. We must therefore proceed on the premise that there were no outstanding corporate debts on July 20 which precluded the taxpayer, as trustee, from distributing the apricot crop to himself. Cf. Iowa Bridge Co. v. Commissioner of Internal Revenue, 8 Cir., 39 F.2d 777.[1]

The Tax Court thought that, in any event, it was beyond the power of the taxpayer, as trustee, to distribute the apricot crop to himself, since that crop at the time of his effective appointment as trustee was already in the hands of Skookum, though apparently not yet sold.[2] We do not agree. The Tax Court itself appeared to be of the view that when the corporation delivered crops to Skookum it became owner of an undivided share of the fungible fruit in the hands of Skookum as bailee. This is our understanding of the corporation's membership contract and the actual arrangement between the parties. Cf. Barnes v. Patrick,

---

1. We might add that even if the finding of the Tax Court with reference to the existence of corporate debts were to be sustained, it would not follow that the taxpayer did not distribute the apricot crop to himself as a liquidating dividend. The Tax Court construed Rem.Rev.Stat. § 3803-52, which sets out the powers and duties of a trustee in dissolution, as prohibiting such a distribution. This is questionable. At least, the Supreme Court of Washington has recognized and approved without comment a distribution of corporate assets to shareholders who assumed the outstanding corporate obligations. Carter v. Curlew Creamery Co., 16 Wash.2d 476, 134 P.2d 66; Carter v. Curlew Creamery Co., 20 Wash.2d 275, 147 P.2d 276. But even if such a distribution is "prohibited", it would be something of a stretch to say that a distribution of corporate assets subject to or with the taxpayer assuming the corporate debts, if effected, is null and void, and is therefore entitled to no recognition. The question would still seem to be whether the distribution was in fact made.

The Tax Court was also of the view that if the taxpayer took the crops, assuming the liabilities of the corporation,

the corporation realized income to the extent of the liabilities so assumed. We think not. Normally where property is transferred subject to or assuming liabilities against it, the amount of the liabilities is deemed a part of the amount realized by the transferor on the transaction. See Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301; Brons Hotels, Inc. v. Commissioner of Internal Revenue, 34 B.T.A. 376. But this rule applies only where gain or loss is realized for tax purposes on the transaction. No gain or loss is realized by a corporation on a distribution of liquidating dividends in kind. Treas.Reg. 118, § 39.22(a)-20. Thus a distribution of liquidating dividends in kind subject to the corporate liabilities, or with the shareholders assuming the corporate debts, would not result in any income to the corporation. See United States v. Cummins Distilleries Corp., 6 Cir., 166 F. 2d 17; Louisville Trust Co. v. Glenn, D.C.Ky., 65 F.Supp. 193.

2. At least, it was shown that no apricots were sold by Skookum prior to July 18, 1943, and it was not shown that any were sold by it prior to July 20. The first proceeds of apricot sales were not paid by Skookum until August 6, 1943.

176 Wash. 142, 28 P.2d 293. There was nothing to prevent the taxpayer, as trustee, from distributing this share to himself, and nothing which should prevent us from recognizing such a distribution, if made.

There were two courses open to the taxpayer. He could sell the apricot and peach crops for the corporation as trustee in dissolution, through Skookum, and take the proceeds as liquidating dividends, in which event the proceeds of the sale would be taxable to the corporation, Treas.Reg. 118, § 39.22(a)–20; Fairfield S. S. Corp. v. Commissioner of Internal Revenue, 2 Cir., 157 F.2d 321; or, as trustee, he could distribute the crops to himself as liquidating dividends and sell them as an individual, through Skookum, thus avoiding the tax to the corporation. Treas.Reg. 118, § 39.22(a)–20; United States v. Cumberland Public Service Co., 338 U.S. 451,[3] 70 S.Ct. 280, 94 L.Ed. 251.

We turn, then, to the critical question whether the taxpayer "distributed" the apricot and peach crops to himself as a shareholder. The fruit was personal property, and no writing was necessary to transfer title to it. Marston v. Rue, 92 Wash. 129, 159 P. 111. The corporation had no debts after July 15, 1943. Both the power to distribute the crops and the sole beneficial interest in them were held by the taxpayer, in his dual capacity as trustee in dissolution and sole shareholder. As a practical matter, then, the crops were his for the taking.

In similar circumstances it has been held that any words or acts manifesting the person's intention to presently take title to the property in his individual capacity, or indicating that he considered the property his own, is sufficient to establish that the transfer was made. In re Grant, D.C.N.Y., 198 F. 708, 709, 710, affirmed without discussion of this point, Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423. This holding was based, by way of analogy, on the New York rule as to distributions by an executor of an estate who is also sole legatee. This rule, in turn, appears to be founded on the proposition that when all debts of the estate are paid, the legal title of such person to the property of the estate, as executor, and his equitable title, as legatee, are merged, so that the executor-legatee need only show that he

3. The proceeds of the apricot crop were paid to the RACC in discharge of debts. For reasons stated above in the text, it must be taken as a fact that these debts were owed by the taxpayer and not by the corporation. If the corporation is deemed to have made the sale, through Skookum, of the apricots, then the payment by Skookum of the proceeds to RACC would in effect be a payment by the corporation of a liquidating dividend to the taxpayer. If the taxpayer is deemed to have made the sale, through Skookum, of the apricots, then the payment by Skookum of the proceeds to the RACC would in effect be a payment by the taxpayer of his own debt. In either event the proceeds would be income of the one who owned the apricots at the time of their sale. The problem would be no different even if it be assumed that the corporation, and not the taxpayer, owed the debts to the RACC. Still the proceeds of the sale of the apricot crop would be income of the taxpayer if the crop belonged to him at the time of the sale. For if the corporation was indebted to the RACC, then the taxpayer, if he took the apricots as a liquidating dividend, took them subject to or assuming such indebtedness. The debts would thus have become his debts, and the payment thereof would not have resulted in income to the corporation. See Louisville Trust Co. v. Glenn, D.C.Ky., 65 F.Supp. 193, 200 and footnote 1, supra.

The record does not show to whom the proceeds of the peach crop were paid. But in any event, the proceeds were income of the one who owned the crop at the time of the sale. If this was the corporation, then the proceeds were income of the corporation, and the inquiry would stop at that point. If the taxpayer owned the peaches at the time of sale, then the proceeds were his income, and to hold the corporation taxable it would be necessary to go further and show that the taxpayer paid these proceeds to the corporation. This was not shown. Thus the question on which our ultimate decision must rest is simply whether the corporation or the taxpayer owned the peaches at the time they were sold.

accepts the legacy to become absolute owner. Blood v. Kane, 130 N.Y. 514, 29 N.E. 994; In re Mullon's Estate, 145 N.Y. 98, 39 N.E. 821; Anderson v. Carlson, 201 App.Div. 260, 194 N.Y.S. 112; In re Annunziato's Estate, 201 Misc. 971, 108 N.Y.S.2d 101. This reasoning may be inapplicable here, for it is doubtful that a trustee in dissolution under the Washington statute holds legal title to the corporate assets. It may be that he has only the possession of the assets with such power to deal with them as the statute gives him. See Rem.Rev.Stat. §§ 3803–49, 3803–52, 3803–59½; 16 Fletcher Cyclopedia Corporations § 8175.

But even in those executor-legatee cases where the doctrine of merger of legal and equitable titles is not relied upon, it is held that any words or acts of such person indicating an election by him to take the property as his own are sufficient to show that a distribution was made. See Mallett v. Hall, 129 Me. 148, 150 A. 531; Bratt v. Cox, 290 Mass. 553, 195 N.E. 787; Hobbs v. Cunningham, 273 Mass. 529, 174 N.E. 181; 34 C.J.S., Executors and Administrators, page 371, § 486. The rule is sound and should be applied here. Where both the power to distribute property and the sole equitable right to it are held by a single person, who is both "distributor" and "distributee", and the only person with any interest in the matter, we see no reason why any more should be required to prove a "distribution" than that the person intended to presently take the property as his own, and that this intention was manifested in some manner.[4]

Applying these principles here, we think it was shown that a distribution of the crops was in fact made. We have evidence of the taxpayer's long-avowed purpose to dissolve the corporation and operate the business as an individual. Pursuant to this intention a plan to liquidate the corporation by distribution of its assets in kind was adopted in the resolution of May 31. July 7 was the date later fixed for commencement of dissolution proceedings because it came after delivery of the cherry crop and prior to delivery of the apricot crop and was considered a convenient time to close the business of the corporation. Shortly prior to July 7 the taxpayer instructed Skookum to handle the apricot and peach crops, when delivered, for his individual account. The books of the corporation were closed on July 15. A short interval was allowed for outstanding checks to clear, and the corporation's bank account was transferred to the taxpayer on August 3. The steps taken indicate that, as the taxpayer testified, he intended in mid-July to assume immediate individual ownership of the business and its stock in trade—the apricot and peach crops. Had it been shown that the taxpayer on July 20 instructed Skookum to hold the apricot and peach crops for his individual account, we think there could be no doubt but that, under the rule stated, a distribution of the crops would have been effected. But the instructions had already been given. To have repeated them would have been a useless act. Pursuant to the prior instructions Skookum held the appropriate shares of the pooled apricots and peaches in its hands

---

4. In the prior proceeding involving these same parties and issues the Tax Court made a finding that the taxpayer "took possession" of the fruit crops of the corporation immediately after July 17, 1943. This finding was not *res judicata* for the reasons stated in connection with the finding as to the existence of corporate debts, discussed above in the text of this opinion. This finding was alleged as a fact by the taxpayer in his petition below and was admitted by the Commissioner in his answer. However, the allegation that the taxpayer "took possession" of these crops is in conflict with other allegations in the petition, also taken from the findings in the prior case, that on July 17 the cherry crop and most of the apricot crop was in the hands of Skookum. Further, evidence was adduced without objection on this point in the court below. Cf. Cutcliffe v. Commissioner of Internal Revenue, 5 Cir., 163 F.2d 891. We do not rely upon either the finding or the admission.

for the taxpayer individually, sold them as his property, and treated the proceeds as belonging to him, all with the taxpayer's knowledge and acquiescence.

These circumstances considered as a whole leave no doubt that the taxpayer in mid-July and at all pertinent times thereafter regarded the crops as his own and intended to deal with them as such. This intention was adequately manifested. In leaving it to Skookum to hold and sell the crops for his individual account, pursuant to his prior instructions, the taxpayer did all that he thought was necessary to effect a distribution of the crops to himself, and as much as would ordinarily occur to one not learned in the nice distinctions of our tax laws. Cf. Novo Trading Corp. v. Commissioner of Internal Revenue, 2 Cir., 113 F.2d 320, 322. We think there was a distribution of the crops.

We are mindful that findings of the Tax Court on questions of fact are conclusive unless clearly erroneous. Grace Bros., Inc. v. Commissioner of Internal Revenue, 9 Cir., 173 F.2d 170. But the facts material to the question whether the taxpayer distributed the apricot and peach crops to himself were substantially undisputed. The question whether a distribution was effected, as we see it, depends simply on what the taxpayer actually intended, with a requirement that his intention be objectively manifested in some manner. We think the error of the Tax Court was in applying a stricter rule. But if this was not the error, then we think the finding of the Tax Court on the question was clearly erroneous.

The taxpayer contends here, as in the court below, that the deficiency notice in the instant case was issued too late. This contention is rejected for the reasons stated in the Tax Court's opinion. See Paso Robles Mercantile Co. v. Commissioner of Internal Revenue, 9 Cir., 33 F.2d 653, certiorari denied 280 U.S. 595, 50 S.Ct. 40, 74 L.Ed. 642.

We hold that the proceeds of the cherry crop here in question were income of the corporation, but that the proceeds of the apricot and peach sales were not. This will require a recomputation of the transferee liability of the taxpayer.

Accordingly, the cause is remanded with directions to enter a decision in accordance with the views herein expressed.