**Thomas M. HAGEMAN, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 31056.**

United States Court of Appeals,
Fifth Circuit.

June 22, 1971.

Rehearing Denied July 14, 1971.

---

Richard W. Roe, Fort Lauderdale, Fla., for petitioner-appellant.

K. Martin Worthy, Chief Counsel, Internal Revenue Service, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Tax Division, U. S. Dept. of Justice, Bobby D. Burns, Atty., Internal Revenue Service, Washington, D. C., Robert W. Rust, U. S. Atty., Miami, Fla., Bennett N. Hollander, Richard Farber, Attys., Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and CLARK, Circuit Judges.

PER CURIAM:

Taxpayer contends that complete liquidation of his solely owned corporation (HBDC) was effected under 26 U.S.C.A. § 331(a)[1] in 1964 rather than 1965 as held by the Tax Court. We affirm.

There is really not a significant question of law. All agree that "complete" liquidation is tested in practical terms and that the liquidation need not be lit-

erally complete.[2] This is essentially a factual question for the trier of the fact, not ordinarily this Court.

The case turns on the disposition of the two major assets of HBDC: the Hortt property, an ocean front residence, and (more important) the Rivermead high rise apartment. The deed from HBDC to Taxpayer for the Hortt residence was dated and delivered in 1965, and that from HBDC to the third party purchaser of Rivermead was not effectually delivered until February 1965. Taxpayer must contend that, while this is true, as a practical proposition there had been a distribution by the corporation to him during 1964 pursuant to a resolution of the stockholders and directors adopted November 17, 1964, under 26 U.S.C.A. § 6043, the existence of the resolution being manifested by the filing in 1965 of Form 966.

This does not carry the day—although it might have—for several reasons. The foremost is the fact that the plan of liquidation (as permitted by § 6043) did not call for any definitive date for liquidation distribution except that it had to be accomplished "as quickly as possible, but in any event not *less*[3] than twelve (12) months from the date hereof."

More important, every objective fact manifested a purpose not to distribute these assets to Taxpayer but to retain them in the corporation. True, this was not for tax or corporate purposes. But it was deliberately done under the most specific and competent legal advice. Taxpayer had two other problems, one his health, the second marital. He and his coterie of advisers were apprehen-

1. Section 331(a) (1) of the 1954 Code provides that "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock."

  Taxpayer desired to offset this loss against a substantial gain from the sale of individually owned real estate. 26 U.S.C.A. § 165(a).

2. See Shore v. Commissioner of Internal Revenue, 5 Cir., 1961, 286 F.2d 742; Waterman Steamship Corp. v. Commis-

sioner of Internal Revenue, 5 Cir., 1970, 430 F.2d 1185; Genecov v. United States, 5 Cir., 1969, 412 F.2d 556; Gensinger v. Commissioner of Internal Revenue, 9 Cir., 1953, 208 F.2d 576; Commissioner of Internal Revenue v. Winthrop, 2 Cir., 1938, 98 F.2d 74.

3. We disregard the obvious scrivener's error and read the "less" as "more". But this does not help since there was not even a paper commitment substantially to distribute assets in 1964.

sive that even though his wife (from whom he obtained a divorce in 1965) had in a separation agreement made an express commitment to waive her dower rights and join in any deeds, she would sense the power of her position and coerce the anxious Taxpayer into a payment of blood money. The title not only remained in HBDC, but the initial sale contract and, more important, the December 31, 1964 "Closing Agreement and Escrow" were those of the corporation to which Taxpayer was not even a nominal party. And when the contingent conditions were satisfied to the purchaser's satisfaction, the closing in February 1965 gave final effect to the corporate deed in return for the net cash price of $159,335.05 by check payable to HBDC.

These factors and many more indicators of corporate dealing warranted the critical finding that Rivermead was not distributed to Taxpayer in 1964.

Affirmed.