[No. 29632. Department Two. May 4, 1946.]

EDNA ELIZABETH CARTER, *Appellant,* v. JOHN P. HELPHREY *et al., Respondents.*[1]

*James A. Williams* and *Paul K. Cooney,* for appellant.

*Garvin & Frissell,* for respondents.

ROBINSON, J.—It has been established, by previous decisions of this court, that, for many years, Ira Carter and Edna Elizabeth Carter, the plaintiff in the instant case, owned two hundred of the four hundred shares of Curlew Creamery Company, Inc.

In 1922, the corporation owed a considerable sum to John P. Helphrey, the owner of the other two hundred shares, and desired to borrow still more. To secure these advances, Ira Carter pledged to Helphrey the stock owned by the Carter community, on terms which conferred voting rights on the pledgee. In 1940, the corporation voluntarily dissolved. Frances Snook was elected statutory trustee to wind up the affairs of the corporation, and, in her final report, distributed the assets to John P. Helphrey, five eighths,

[1]Reported in 168 P. (2d) 508.

to James M. Helphrey, two eighths, and to Frances Snook, one eighth. It was recited, in the trustee's report, that these three persons assumed, jointly and severally, the liabilities of the corporation.

All the above facts are stated more elaborately in our opinion in *Carter v. Curlew Creamery Co.*, 16 Wn. (2d) 476, 134 P. (2d) 66. That action was commenced by Ira Carter, who died during its pendency, and was continued by his widow, Edna Elizabeth Carter, as his executrix. It sought a decree invalidating the dissolution of the corporation and requiring the persons, above named, to restore to the corporation the assets distributed to them and make an accounting, and prayed for other incidental relief. On appeal, it was held that the corporation was legally dissolved; but, it appearing that the two hundred shares of Carter's stock had, during the pendency of the action, been set aside to the surviving widow, she was made a party individually, and the cause was remanded to the trial court, with direction "to hear and determine the rights of appellant as executrix, and the rights of Edna Elizabeth Carter, individually . . . , if any they have, . . ."

Further proceedings in the trial court took place, and the following decree was entered on July 20, 1943:

"That there is now due and owing to John P. Helphrey on account of the guarantee heretofore executed by Ira Carter in favor of said John P. Helphrey, wherein said Ira Carter pledged to John P. Helphrey 200 shares of the common stock of Curlew Creamery Company, Inc., a corporation, to secure sums due under and by virtue of said guarantee, the sum of $15,617.18, no part of which has been paid, and the whole thereof is due.

"IT IS BY THE COURT FURTHER ORDERED, ADJUDGED AND DECREED that the pledge heretofore mentioned be and the same is hereby ordered foreclosed, and that the 200 shares of stock in the Curlew Creamery Company, Inc., a corporation, so held by John P. Helphrey to secure said pledge, be sold, and that the proceeds thereof be applied on account of the amount due on said pledge, and that the said sale be held as provided by statute, to all of which plaintiff excepts, and the exception is allowed."

An appeal was taken from that decree. In ruling upon the appeal, this court, among other things, said:

"The pledge has been ordered foreclosed, and any rights appellant may have available to her with reference to the assets of the corporation are dependent upon the final outcome of the foreclosure proceedings. If the respondent or some third party becomes the purchaser at the sale and thus acquires title to the stock, the appellant will have nothing upon which to base a claim to any of the corporate assets. *Before the appellant is in any position to assert any claim to any part of the net assets of the corporation, she must acquire title to the stock by becoming a purchaser at the sale or from some one who acquires title to it in that way.* We, therefore, hold that the court properly decided that the action brought by the appellant should be dismissed. [Italics ours.]

"Having, in effect, decided that appellant was the owner of the stock subject to the pledge, it was next the duty of the court to determine whether, at the time of the dissolution of the corporation, it was indebted to respondent for any loans or advances made and which the pledge secured. The court found that there was such an indebtedness, which, with accrued interest on two notes, amounted in all as of June 30, 1943, to $15,617.18; and that this amount was due and unpaid. This finding is supported by the evidence. The decree directs that the pledge be foreclosed and the pledged stock sold in satisfaction of the indebtedness. We think this is all the relief the respondents are entitled to under the issues as presented under their second amended answer and cross-complaint.

". . . All it sought to do in carrying out the mandate of this court on remand was to determine that the stock was the property of the appellant, that the pledge should be foreclosed, the stock sold, and the proceeds of the sale applied in satisfaction of the indebtedness of the corporation to respondent for unpaid loans and advances." *Carter v. Curlew Creamery Co.,* 20 Wn. (2d) 275, 147 P. (2d) 276.

It is clear, then, that, at this stage, it had been adjudicated by the trial court, and affirmed by this court, on the two appeals, that (1) the Curlew Creamery Company, Inc., had been legally dissolved; (2) that Mrs. Carter could not validly claim any interest in its assets by reason of her ownership of the pledged stock; and it is further clear that

John P. Helphrey was ordered, by direct mandate of the court, to foreclose the pledge. Helphrey, as ordered, foreclosed the pledged stock, and, as far as appears, was the only bidder at the sale. Whereupon, Mrs. Carter brought this action against John P. Helphrey, Frances Snook, and James M. Helphrey as individuals and as partners doing business as the Curlew Creamery Company.

The complaint, after setting out the background facts, alleged as follows:

"VII. On or about October 14, 1944, defendant John P. Helphrey, through his attorney, notified plaintiff in writing that, on November 15, 1944, at 10:00 o'clock A. M. at the Court House, Spokane, Washington, he would sell plaintiff's said 200 shares of stock in Curlew Creamery Company, a corporation, so held by him in pledge. At the time so specified he did sell said stock for said purpose through George Harber, his agent and sheriff of Spokane County, who was by said John P. Helphrey authorized so to do, and at such sale became the purchaser thereof at the sum of $16,875.20, which was the value thereof. Said John P. Helphrey, through his agent, then announced that the amount so secured by said pledge was the said sum of $15,617.18, the indebtedness so owing by defendants and assumed by defendants as above alleged, $1,244.22 interest on the amount so owing, a $10.00 bond premium and a charge of $3.80 made by said agent for making the sale. No payment was made on the purchase price at the sale, except the satisfaction as hereinafter alleged of the indebtedness secured by the pledge.

"VIII. At the time of said sale there was no indebtedness of plaintiff, nor said Ira Carter, or his estate, to said John P. Helphrey.

"IX. Due to the facts hereinbefore alleged plaintiff, by said sale of her 200 shares of stock of the Curlew Creamery Company, a corporation, was compelled to pay the said indebtedness of defendants to John P. Helphrey, and by such payment plaintiff was subrogated to all the rights of said John P. Helphrey due to said indebtedness of defendants."

Plaintiff prayed for a recovery against the Curlew Creamery Company partnership, and each of its members, for $16,875.20, with interest from the date of the foreclosure

sale. A general demurrer was sustained. Plaintiff refused to further plead, and the action was dismissed. This appeal followed.

Referring to the former case and quoting from one of our opinions therein, the trial court, in ruling on the demurrer, said, in part:

"But while she [Mrs. Carter] was the owner, her ownership was subject at all times to the lien of the pledge executed by Mr. Carter in favor of Mr. Helphrey to secure advances made and to be made by him for the benefit of the corporation; and she was in 'no position to assert any claim to any part of the net assets of the corporation' unless and until she acquired 'title to the stock by becoming a purchaser at the sale or from some one' who acquired 'title to it in that way.' *Her rights were at all times subordinate to those of the pledgee of the stock, and there was assuredly no obligation, either equitable or moral, on his part to clear her title to the stock by sacrificing his unquestionable claim against it.* Her title to the stock was only a qualified one, and could be cleared only by payment of the indebtedness standing against it. She was unwilling or unable to make such payment, and although she had ample notice of the forthcoming sale, she made no effort to acquire a clear title to the stock by purchasing it at the sale or from the purchaser. The interest of Mrs. Carter in the stock continued up to the time of sale, but simultaneously—at the very instant of the consummation of the sale—the complete ownership and clear title to the stock passed to the purchaser Mr. Helphrey. [Italics ours.]

"The issue raised by the complaint is new only in form, involving, as it necessarily does, the claimed right of Mrs. Carter to share in the assets of the former Curlew Creamery Corporation by reason of her ownership of 200 shares of stock in that (now dissolved) corporation.

"It seems to me there is no issue presented in the present case which has not been adjudicated in the prior proceedings in the litigation between the same parties in case No. 107894 in this court. The demurrer will, therefore, be sustained."

It may be added that the appellant's contention really amounts to a claim that John P. Helphrey could not equitably be permitted to be a purchaser at the foreclosure sale. However, the trial court which ordered the foreclosure had all the parties before it and was well aware of the fact that

the parties to the partnership had agreed to assume the debts of the corporation, including its indebtedness to Helphrey, but there was no suggestion that he would not be an eligible bidder at the foreclosure sale.

■ But, passing the question of former adjudication, we proceed to inquire as to whether the complaint sets up a situation which would warrant the court in applying the equitable doctrine of subrogation. We requote paragraph IX:

"IX. Due to the facts hereinbefore alleged plaintiff, by said sale of her 200 shares of stock of the Curlew Creamery Company, a corporation, was compelled to pay the said indebtedness of defendants to John P. Helphrey, and by such payment plaintiff was subrogated to all the rights of said John P. Helphrey due to said indebtedness of defendants."

It is alleged that the appellant was compelled "to pay the said indebtedness of defendants to John P. Helphrey." That indebtedness was not created by a promise of the defendant partners to the corporation to pay its debt to Helphrey, nor by their promise to Helphrey to pay the corporation's debt to him, but by their promise to the winding-up trustee to pay the corporation's creditors, of whom Helphrey was one. He was merely a third-party beneficiary of the promise. Mrs. Carter had no standing whatever to enforce that promise or to require John P. Helphrey to enforce it. Helphrey, as a third-party beneficiary, could, perhaps, have enforced that promise by requiring James M. Helphrey to pay him two eighths of the amount owing to him by the corporation, Frances Snook, one eighth, and by taking five eighths out of one of his own pockets and putting it in the other, and, for all we know, he might have adopted that course, had he not been ordered by the court to foreclose the lien of the pledge. As a result of a perfectly regular foreclosure, or at least one to the regularity of which no objection seems to have been taken, the corporation's debt to him was wiped out. It is contended that we must resort to an equitable fiction and hold that it still exists.

Admitting all the facts alleged in the complaint, as distinguished from conclusions, we are unable to see any in-

equitable conduct on the part of the defendants, or any equity in favor of the plaintiff. It is not a case where two parties were liable to pay the same debt, one primarily, the other secondarily. Mrs. Carter was in no way liable for the indebtedness of the partners to Helphrey. She had nothing to do with that transaction. Nor was she liable for the corporation's debt to Helphrey. Helphrey merely foreclosed his long-standing lien on her stock, as the court instructed him to do. That this indirectly resulted in a benefit to the defendant partners was merely incidental.

Furthermore, subrogation in the form sought here is purely an equitable remedy, to be afforded only to those whose claims are just and equitable. The plaintiff's sole complaint is that she has been deprived of her stock, and she seeks a recovery against the three defendant partners, and each of them, in the sum of $16,875.20, although it had been twice adjudicated before the pledge was foreclosed, the corporation had been duly and lawfully dissolved, and its assets distributed in the manner provided by the statute. The plaintiff's demand is in itself unconscionable; for it would seem that the stock can have no value other than a sentimental value.

But however that may be, it was squarely held, in the second of the Curlew Creamery Company opinions, above cited, that Mrs. Carter could have no further interest in the assets unless she purchased the stock at the foreclosure sale, or acquired it from someone who did. We are wholly unable to see how her stock can be shown to have had any value without relitigating matters disposed of in the two former cases, and later affirmed in this court; and, as the trial court held in ruling on the demurrer in this action, that, of course, cannot be done.

The judgment appealed from is affirmed.

BEALS, MILLARD, SIMPSON, and MALLERY, JJ., concur.