[No. 29207. Department One. March 18, 1944.]

EDNA ELIZABETH CARTER, *Appellant,* v. CURLEW CREAMERY COMPANY *et al., Respondents.*[1]

[1]Reported in 147 P. (2d) 276.

*Jas. A. Williams* and *Paul K. Cooney,* for appellant.

*Wilmot W. Garvin* and *R. W. Nuzum,* for respondents.

GRADY, J.—This case was before this court on a former appeal, *Carter v. Curlew Creamery Co.,* 16 Wn. (2d) 476, 134 P. (2d) 66, in which there is set forth a statement of the issues as disclosed by the pleadings and of the material facts as appears from the record made in the trial court relative to the history and background of the Curlew Creamery Company and the business relationship between the two stockholders, Ira Carter, the deceased husband of the appellant, Edna Elizabeth Carter, and John P. Helphrey, and between them and the corporation; however, in order to connect the matters and things before the court on this appeal with that which transpired previously, some repetition is necessary.

The Curlew Creamery Company was engaged in the creamery business. Its principal place of business during the later years of its operation was at Spokane, but its activities extended to Curlew and Chewelah. The common capi-

tal stock of the corporation consisted of four hundred shares, of which Ira Carter owned two hundred shares and John P. Helphrey two hundred. One share stood in the name of Mrs. Carter and one in the name of Mrs. Helphrey, but, to all intents and purposes, the stock belonged to the respective husbands.

Mr. Carter managed the business of the corporation until about September, 1935, assisted in later years by Frances M. Snook, a daughter of Mr. Helphrey. On September 22, 1922, Mr. Carter and Mr. Helphrey executed a written agreement, reciting that the former was indebted to the latter in the sum of sixty-eight hundred dollars, and that the corporation was in financial difficulty and must either borrow money from Mr. Helphrey or he become an endorser upon its negotiable paper. It was agreed that Mr. Carter would deposit with Mr. Helphrey his two hundred shares of stock as security for the sixty-eight hundred dollar indebtedness and for any money Mr. Helphrey might thereafter loan to the corporation, the material part of the agreement being as follows:

"The condition of the foregoing assignment and pledge is such, that if the said Ira Carter shall pay to the party of the second part the said sum of $6,800.00 according to the terms and conditions of one certain promissory note executed by said Ira Carter and payable to the order of said John P. Helphrey on or before Sept. 22nd, 1924, with interest thereon at the rate of 8 per cent. per annum, and if the said Ira Carter or the said Curlew Creamery Co. shall pay to said party of the second part any and all sums which he has or may hereafter loan or advance to said Curlew Creamery Co. and shall save the said party of the second part free and harmless of and from any loss, liability or damage by reason of any and all endorsements which he has or may make for the benefit of said Curlew Creamery Co. upon its negotiable notes, bonds, bills of exchange, checks or drafts; then the said assignment and pledge shall be null and void, otherwise to be and remain in full force and effect."

Subsequently, the sixty-eight hundred dollar indebtedness was liquidated, but the corporation became, and continued to be, indebted to Mr. Helphrey for money loaned.

In its decree, from which this appeal is taken, the trial court found and adjudged such indebtedness to be $15,617.18.

On December 19, 1940, the corporation held a stockholders' meeting, attended by Mrs. Snook and Mr. Helphrey, at which a resolution was passed to dissolve the corporation as of December 31, 1940, pursuant to Rem. Rev. Stat. (Sup.), § 3803-49 [P. C. § 4503-149]. Mrs. Snook, who then owned twenty-five shares of the corporate stock, was elected trustee to wind up the affairs of the corporation, which she did by transferring and distributing its assets to the following stockholders: John P. Helphrey, five eighths, James M. Helphrey, two eighths, and Frances M. Snook, one eighth. In consideration thereof, these parties assumed and agreed to pay the debts of the corporation. They formed a partnership and continued under the firm name of Curlew Creamery Company. On the former appeal, this court, p. 496, held that the dissolution proceedings were in all respects valid, but remanded the case to the lower court to "proceed to hear and determine the rights of appellant as executrix, and the rights of Edna Elizabeth Carter, individually . . . and the rights of respondents, if any they have, under their second amended answer and cross-complaint, consistent with this opinion."

When the case was called for trial on remand, the court conducted a pre-trial hearing for the purpose of settling the pleadings and determining the issues to be tried. As a result of this hearing, the court (1) made Edna Elizabeth Carter sole plaintiff; (2) permitted the plaintiff to file a supplemental reply to the second amended answer and cross-complaint of defendants, and sustained an oral general demurrer thereto; (3) ordered that the pleadings upon which the case would be tried were the amended complaint and bill of particulars, the second amended answer and cross-complaint, and the reply; and (4) ordered that the statement of facts and exhibits used on the former appeal be considered as a part of the evidence.

In view of the fact that the court, on the former trial, had granted a motion for nonsuit at the close of the plaintiff's case, the defendants were directed to proceed with

their evidence. The plaintiff made an extended offer of proof, which the court rejected on the ground that it involved matters having to do with the dissolution of the corporation, and was, therefore, immaterial to the issues then before the court for trial. We find no error in this respect.

For the purpose of determining her rights, the plaintiff advanced the theory, under her amended complaint, that she was the owner of two hundred shares of stock in the dissolved corporation, subject to the pledge to the extent of the unpaid amount Mr. Helphrey had advanced to the corporation pursuant to the pledge agreement; and that, because of its dissolution, she was the owner of one half of its remaining assets after payment of the corporate creditors or, in the alternative, one half of the business and assets of the partnership.

For the purpose of determining their rights, the defendants advanced the theory, under their second amended answer, affirmative defense, and cross-complaint, that the corporation was legally dissolved and that its assets had all been transferred by the trustee appointed to wind up its affairs to the parties composing the firm of Curlew Creamery Company in consideration of the assumption by them of all the corporate indebtedness, including unpaid amounts owing to the preferred stockholders; also, that the pledge of stock secured an indebtedness owing by Mr. Carter at the time of the dissolution in excess of six thousand dollars, which had not been paid, and asked that the pledge be foreclosed, the stock sold, and the receipts applied in satisfaction of such indebtedness.

In the reply to the pleading of the defendants, it was claimed that any indebtedness which the pledge secured had been paid; that any such indebtedness that might in fact exist was barred by the statute of limitations; and that, by reason of certain alleged acts and course of conduct on the part of defendant John P. Helphrey, the pledge had been released and discharged.

The evidence submitted by the defendants took a somewhat wider range than would be indicated by the pleadings,

and there is advanced by the defendants the additional theory that, at the time of the dissolution of the corporation, it was insolvent in that its debts far exceeded the value of its assets; and, inasmuch as the rights of plaintiff as a stockholder are subject to the claims of creditors, there remained no beneficial interest adhering to the stockholders at the date of the dissolution of the corporation.

We think the first question to be decided is whether the court erred in sustaining the oral general demurrer to the supplemental reply filed by the plaintiff. The issue tendered by the reply was to the effect that, after the commencement of this action and after the previous judgment had been entered, the plaintiff made written demand upon John P. Helphrey, the holder of the pledge, that he forthwith proceed to enforce any demands which he had or claimed to have under the pledge agreement; and, if he failed to do so, the pledge would be treated as released, and that Mr. Helphrey had not done so.

It is the contention of the plaintiff that the relationship of the corporation and Mr. Carter, by virtue of the pledge agreement, was that of principal and surety; and that, under Rem. Rev. Stat., §§ 974, 975 [P. C. §§ 8465, 8466], the failure of Mr. Helphrey to comply with the demand released the pledge, and it and the indebtedness it secured were released and discharged. They provide as follows:

"§ 974. NOTICE TO CREDITOR TO INSTITUTE ACTION. Any person bound as surety upon any contract in writing for the payment of money or the performance of any act, when the right of action has accrued, may require, by notice in writing, the creditor or obligee forthwith to institute an action upon the contract.

"975. SURETY DISCHARGED. If the creditor or obligee shall not proceed within a reasonable time to bring his action upon such contract, and prosecute the same to judgment and execution, the surety shall be discharged from all liability thereon."

This contention makes it necessary that we construe the pledge agreement, the material part of which we have quoted above. While the sixty-eight hundred dollar debt of Mr. Carter is referred to, we are not interested in it

for the reason that it was paid, but that part of the pledge agreement is useful in arriving at the intention of the parties.

It will be observed that Mr. Carter did not promise to pay Mr. Helphrey any of the loans or advances he had made or might make to the corporation. It seems quite clear that the kind of contract contemplated by § 974 is the usual surety contract where the principal and the surety bind themselves by the same instrument to pay an obligation incurred by the principal. The corporation is not a party to the pledge agreement, so there is no principal. All Mr. Carter did was to deposit his stock with Mr. Helphrey as a pledge to secure money loaned to the corporation. If either Mr. Carter or the corporation elected to pay the loans, then the pledge would be released, but Mr. Helphrey could not elect to waive his security and sue Mr. Carter for the indebtedness created by the money loaned. He could sue the corporation, but not Mr. Carter. His only remedy, so far as Mr. Carter was concerned, was to foreclose the pledge. We therefore think that the contract did not make Mr. Carter a surety as contemplated by the above-quoted statutes, and that the court was right in sustaining the oral demurrer to the supplemental reply.

We have thus far referred to the respective parties as plaintiff and defendants as it seemed more expedient so to do, but hereafter we shall refer to the plaintiff as appellant, to Mr. Helphrey as respondent, and to the defendants collectively as respondents.

The appellant claims that the trial judge proceeded on the theory that Mr. Carter surrendered his rights in and to the stock he pledged prior to the dissolution of the corporation, but, in our review of the record, we must look to the decree as a guide as to what was decided by the court.

The decree directs that the pledge be foreclosed, which presupposes that the appellant is the owner of the stock. This is the legal status of the stock because the rule is that, where property is pledged to secure the debt of either the pledgor or of another, the pledgee, in order to

acquire title to the pledged property, must foreclose the pledge and become the purchaser of it at the sale thereof.

But it does not follow that, because she is the owner of the stock subject to the pledge, appellant is entitled to the relief prayed for in her complaint: That she be adjudged to be the owner of one half of the assets of the dissolved corporation or a half interest in the partnership, subject to the corporate debts.

The pledge has been ordered foreclosed, and any rights appellant may have available to her with reference to the assets of the corporation are dependent upon the final outcome of the foreclosure proceedings. If the respondent or some third party becomes the purchaser at the sale and thus acquires title to the stock, the appellant will have nothing upon which to base a claim to any of the corporate assets. Before the appellant is in any position to assert any claim to any part of the net assets of the corporation, she must acquire title to the stock by becoming a purchaser at the sale or from some one who acquires title to it in that way. We, therefore, hold that the court properly decided that the action brought by the appellant should be dismissed.

Having, in effect, decided that appellant was the owner of the stock subject to the pledge, it was next the duty of the court to determine whether, at the time of the dissolution of the corporation, it was indebted to respondent for any loans or advances made and which the pledge secured. The court found that there was such an indebtedness, which, with accrued interest on two notes, amounted in all as of June 30, 1943, to $15,617.18; and that this amount was due and unpaid. This finding is supported by the evidence. The decree directs that the pledge be foreclosed and the pledged stock sold in satisfaction of the indebtedness. We think this is all the relief the respondents are entitled to under the issues as presented under their second amended answer and cross-complaint.

The fact, if it be a fact, that the liabilities of the corporation exceeded its assets at the time of dissolution and the effect this may have upon the value of the stock now owned

by the appellant, or as to her rights relative to the assets of the corporation, or to an accounting from anyone who may have acquired or received by the benefit of any dividends on, or earnings of, the stock while it was held as a pledge, or that which may represent such dividends or earnings—questions we do not decide or indicate any opinion upon—are not elements which we can take into consideration on this appeal. These questions were not determined by the trial court. All it sought to do in carrying out the mandate of this court on remand, was to determine that the stock was the property of the appellant, that the pledge should be foreclosed, the stock sold, and the proceeds of the sale applied in satisfaction of the indebtedness of the corporation to respondent for unpaid loans and advances.

There is another reason why we cannot, in reviewing this case, consider the claimed insolvency of the corporation as a material factor, and that is there is no competent evidence in the record as to either the value of its assets or as to many of the claimed liabilities.

There appear among the exhibits some book entries and a statement of assets and liabilities compiled from the books of the corporation, but they do not prove market value as of any particular time or at all. There appears to be a large item of depreciation in the statement, but it is not verified by competent evidence. While we do not consider these matters before us in view of the issues involved, they may become important should the appellant become the owner of the stock on execution sale and claim in another action the right to have determined whether there are any assets to be distributed among the stockholders of the dissolved corporation. In such an event, the value of the assets should be determined by competent evidence and the liabilities ascertained. In view of the relationship of the parties interested in the corporation, their acts and conduct in their dealings with it would be open to the closest scrutiny by the court.

As heretofore stated, the reply of the appellant sets forth three defenses to the affirmative matter in the second

amended answer: a plea of payment, the statute of limitations, and a release of the pledge. There is no evidence in the record of any payment having been made of the loans and advances included in the amount found owing by the court, and, in view of the conclusions we have reached on other branches of the case, there was no payment of them by operation of law. We find no evidence in the record that would sustain a finding that the claimed indebtedness now before the court is barred by the statute of limitations. Neither of these questions is urged in the briefs of appellant, and we think we are justified in assuming that they have been abandoned.

If we understand the third affirmative defense of appellant correctly, it is to the effect that the relationship of the corporation and Mr. Carter, as to the loans and advances made by respondent pursuant to the pledge agreement, was either that of principal and surety or that Mr. Carter was a guarantor; and that, by reason of the failure of the respondent to proceed promptly against the corporation to recover any unpaid indebtedness secured by the pledge and by reason of the dissolution of the corporation and the transfer of its assets, the position of Mr. Carter was so changed to his detriment as to result in the release and discharge of the pledge according to the general rules of law of surety and guaranty.

As we have heretofore pointed out, we are of the opinion that Mr. Carter was not a surety. The appellant contends that, if Mr. Carter was not a surety, he was a guarantor, and the respondents, in their brief, adopted the view that he was a guarantor. But, as we construe the pledge agreement, we do not think it was the intention of any of the interested parties that Mr. Carter should become personally obligated to respondent to pay any of the loans or advances he might make pursuant to the pledge agreement.

Counsel has cited authority to the effect that, where one secures a debt owing by another, even though he does not obligate himself to pay such debt, he becomes, in effect, a surety. The authorities do not say whether the giving of security is sufficient to make one a guarantor. We do not

feel that we are called upon at this time to enter into a discussion of the differences in the legal status of a surety and a guarantor, respectively, or to determine whether one might assume either status because of pledging property to secure the debt of another. We think by the contract the parties intended that the status of Mr. Carter would be that of a pledgor of his stock to secure his own debt to the respondent and to secure such loans or advances as the respondent might make to the corporation.

There have been some other questions discussed in the briefs of counsel, but they have become immaterial in view of what has been expressed in this opinion.

The decree is affirmed.

SIMPSON, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.

[1]Reported in 147 P. (2d) 272.