[No. 31920-5-I. Division One. January 10, 1994.]

ROGER B. MILLER, ET AL, *Appellants,* v. U.S. BANK OF WASHINGTON, N.A., *Respondent.*

---

*David S. Grossman* and *LeSourd & Patten, P.S.,* for appellants.

*Alan K. Willert* and *Foster Pepper & Shefelman,* for respondent.

WEBSTER, C.J. — Roger and Susan Miller appeal two summary judgment orders of dismissal alleging that U.S. Bank of Washington's[1] lending and collection practices are not exempt from the Consumer Protection Act (CPA) and there were material issues in dispute as to whether the bank breached its contract, a fiduciary duty, or tortiously interfered with the Millers' business expectancies.

### FACTS

This lender liability action arises out of the relationship between U.S. Bank and its debtor, American Fishing Venture 1983 (AFV-83). AFV-83 was a limited partnership and was operating on a line of credit from U.S. Bank. Roger Miller was one-sixth owner of American Boat Management, Inc., AFV-83's general partner. Miller managed AFV-83's day-to-day operations. In December 1983, AFV-83 began operating on a revolving line of credit from U.S. Bank. As a condition of granting the partnership credit the bank required Miller, and certain other individuals, to guarantee the indebtedness.

In December 1986, the bank declared AFV-83's loan in default, demanded payment in full, and as a condition of not foreclosing on the partnership's assets established control accounts.[2] The bank advised the guarantors that they "should be prepared to tell creditors with past due balances as well as other non-essential creditors that the bank is unwilling to finance or permit advances for those non-essential, or past due, unsecured creditors."

The bank allowed use of its cash collateral for continued operations to work out of the indebtedness, despite the default status of the loan. The bank reviewed and approved certain

---

[1]U.S. Bank of Washington is the successor to People's National Bank of Washington.

[2]Cash collateral accounts were set up requiring deposit of all AFV-83's funds in which the bank had a security interest. Proceeds from all sources were deposited in the account, and prior bank approval was required for the partnership to transfer funds to its general accounts.

expenditures, transferred funds from its collateral accounts to AFV-83's general account, and disallowed other transfer payments as not being necessary to maintain continued fishing operations. On several occasions, AFV-83's requests for disbursements detailed amounts due to the IRS for fourth quarter 1986 payroll taxes. In May 1987 U.S. Bank dishonored a check written by AFV-83 to the IRS. The IRS had previously placed a levy on all of AFV-83's accounts, and U.S. Bank placed the funds in a segregated holding account pending resolution of the dispute between it and the IRS as to ownership of those funds.

In the fall of 1987, the partnership ceased doing business and filed a bankruptcy petition. In December 1988, the IRS proposed making a 100 percent penalty assessment against Roger Miller, as a person required to collect, account for, and pay withheld taxes for AFV-83 (federal payroll taxes for the fourth quarter 1986 and third quarter 1987 had not been paid). On July 23, 1990, the IRS levied the assessment against the Millers for $130,641.09.

On October 16, 1991, the court dismissed the Millers' CPA claim. On November 6, 1992, the court granted U.S. Bank's motion for summary judgment dismissing the Millers' remaining claims.

### DISCUSSION

The Millers first claim the court erred in dismissing their CPA claim. They contend there is no support in this record for a finding that the CPA was preempted.

The Washington Consumer Protection Act is codified in RCW 19.86. RCW 19.86.170 exempts actions and transactions which are

> otherwise permitted, prohibited or regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of . . . the United States[.]

The statute does not exempt actions or transactions merely because they are regulated generally; the exemption applies only if the particular practice found to be unfair or deceptive is specifically permitted, prohibited, or regulated. *Vogt v.*

*Seattle-First Nat'l Bank*, 117 Wn.2d 541, 552, 817 P.2d 1364 (1991) (CPA applied to bank acting as trustee).[3] "When both a court and an agency have jurisdiction over a matter, the doctrine of primary jurisdiction determines whether the court or the agency should make the initial decision." *Vogt*, at 554. We consider three factors which govern the application of primary jurisdiction:

> 1. The administrative agency has the authority to resolve the issues that would be referred to it by the court;
> 2. The agency must have special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues; and
> 3. The claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so that the danger exists that judicial action would conflict with the regulatory scheme.

*Vogt*, at 554.

First, the relationship between a national bank and its customers concerning whether the bank's loan collection practices are unfair or deceptive is specifically regulated by the Comptroller of the Currency.

> The Comptroller of the Currency has authority to resolve questions of unfair and deceptive practices by national banks. The Board of Governors of the Federal Reserve System is authorized to prescribe regulations to carry out this authority and to define unfair or deceptive acts or practices. The Comptroller enforces compliance with these provisions under its general enforcement authority. Thus, the Comptroller may issue cease and desist orders requiring a bank to take affirmative action to correct the conditions resulting from any violation of the banking laws. The bank may even be required to make restitution. Additionally, the Comptroller has promulgated rules of practice and procedure governing hearings before it.

(Footnotes omitted.) *Vogt*, at 555; 15 U.S.C. § 57a(f)(1), (2). Thus, the Comptroller of the Currency has primary jurisdiction because a bank's relationship with its customers is regu-

---

[3]We find unpersuasive the bank's argument that the Millers may not cite *Vogt* as authority on appeal because they did not cite it below. Authorities not addressed below may be considered for the first time on appeal where they are pertinent to the substantive issues which were raised below. *See Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990).

lated and the Comptroller has the power to grant relief. 15 U.S.C. § 57a(f)(1), (2).

Next, we evaluate the relative competence of the court and the agency to resolve the issue. Given the pervasive federal regulation of the banking system, 15 U.S.C. § 57a's intent to regulate unfair and deceptive practices,[4] and the statutory enforcement function of the Comptroller of the Currency, the Comptroller is uniquely qualified to regulate and resolve disputes arising in the bank-customer relationship. 15 U.S.C. § 57a. State courts are less competent to do so.

Finally, because these issues involve alleged improper conduct that is governed by federal statute, state court decisions could potentially conflict with the Comptroller's decisions and regulations. Thus, since the issues fall within the scope of a pervasive regulatory scheme and a danger exists that judicial action could conflict with that regulatory scheme, the third factor is also satisfied. The trial court properly dismissed the Millers' CPA claim.

## Remaining Claims

The Millers next claim that U.S. Bank breached the guaranty contract, breached its fiduciary duties, or tortiously interfered with the Millers' business expectancies. Their argument is essentially that U.S. Bank had a duty to forgo collection of AFV-83's debt, or to extend additional credit, to protect them from AFV-83's noncontract liabilities.

■ Summary judgment may be granted only where the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing the grant of summary judgment, we engage in the same inquiry as the trial court, consider the facts in the light most favorable to the nonmoving party, and affirm only if, from all the evidence, reasonable persons could reach but one conclusion.

---

[4]Because they "would seriously conflict with essential monetary and payments systems policies of [the Board of Governors of the Federal Reserve System]". 15 U.S.C. § 57a(f)(1).

*Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 811, 828 P.2d 549 (1992).

Here, whether U.S. Bank impermissibly exercised control over AFV-83 is a factual question that cannot be resolved on summary judgment. However, for purposes of its summary judgment motion, the bank accepted as true the Millers' factual allegations as set forth in the complaint. Summary judgment was therefore appropriate.

Our second inquiry is whether the moving party was entitled to judgment as a matter of law. CR 56(c).

### Independent Cause of Action

The Millers claim that they have an independent cause of action against U.S. Bank. They argue that their damages do not arise under the guaranty or AFV-83's loan contract; rather, their damages arise solely and directly from the IRS penalty assessment against them, and thus, their claim is wholly distinct and independent of any claim the partnership may have against U.S. Bank.

■ Under existing law, a guarantor must show a distinct and different injury before an independent action can be maintained. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988); *see also LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 780, 496 P.2d 343 (in a stockholder derivative suit the stockholder has no independent cause of action), *review denied*, 81 Wn.2d 1003 (1972). *Sparling* is instructive; a guarantor must show a different injury before an independent action can be maintained. *Sparling*, at 640 (guarantors of a debt may not assert Racketeer Influenced and Corrupt Organizations Act (RICO) claims; the injury was to the principal of the guarantors). The Ninth Circuit did not suggest that a different legal source for the same injury would suffice to establish an independent claim. *Sparling*, at 640.

Here, the Millers seek to disassociate their liability to pay the IRS assessment from AFV-83's liability for employee taxes. We first note that Miller was not assessed penalties by the IRS because he was a guarantor of the AFV-83 loan; rather he was assessed a penalty because he was an AFV-83

officer responsible for payment of its tax obligation. Thus, this case does not concern a guaranty per se; rather it concerns duties of a lender, if any, to employees of the debtor. The Millers do not dispute that AFV-83 owes the taxes. If AFV-83 had paid the taxes, the Millers would not have been assessed a penalty. Thus, the Millers' liability and AFV-83's injury are one and the same, and they have no independent action against U.S. Bank.

Additionally, under guaranty principles a guarantor is entitled to avoid liability on the guaranty to the extent that the creditor does not attempt to collect the debt from the debtor. *Carter v. Curlew Creamery Co.*, 20 Wn.2d 275, 284, 147 P.2d 276, 151 A.L.R. 921 (1944). If U.S. Bank had not collected the debt owed it by AFV-83, not only would the bank have been breaching its fiduciary duty to its own stockholders, but also to the Millers as guarantors. U.S. Bank would have been liable for an offset claim against the Millers' guaranty pledge. *National Bank v. Equity Investors*, 86 Wn.2d 545, 548, 546 P.2d 440 (1976). We decline to find that potential noncontract liabilities of AFV-83 and the Millers require U.S. Bank to impair the Millers' on-contract obligation to repay the debt, if AFV-83 did not.

■ In addition, the Millers claim that this court should permit them to bring this suit because the principal debtor is out of business and cannot practically maintain the action. The general rule is that the doctrine of standing prohibits a litigant from asserting another's legal right. *Haberman v. WPPSS*, 109 Wn.2d 107, 138, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed*, 488 U.S. 805 (1988). No right exists under a guaranty contract to assert the rights of the principal debtor other than a right to raise defensively the claims of the principal debtor. *First Tex. Serv. Corp. v. Roulier*, 750 F. Supp. 1056, 1060 (D. Colo. 1990). Thus, a guarantor may not recover affirmatively on the claims of the principal debtor.

The bank did not sue the Millers for collection of the debt under the guaranty contract. The Millers have not cited any authority to allow them to "take over" another's cause of action or to any authority permitting a guarantor to pursue

the principal debtor's lender liability causes of action against the lender. The Millers are not entitled to affirmatively seek recovery on AFV-83's lender liability claims.

## Breach of the Guaranty Contract

The Millers next claim that U.S. Bank breached the guaranty contract's implied covenant of good faith. They argue that the bank acted in bad faith in not allowing AFV-83 to pay its payroll taxes, and as a consequence they were injured when the IRS assessed a penalty against them.

■ "[T]here is an implied duty of good faith and fair dealing imposed on the parties to a contract." *Betchard-Clayton, Inc. v. King*, 41 Wn. App. 887, 890, 707 P.2d 1361, *review denied*, 104 Wn.2d 1027 (1985). However, a party's duty to act in good faith exists only in relation to the performance of specific contract terms and does not obligate the party to accept new obligations which represent a material change in the terms of the contract. *Badgett v. Security State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991); *Betchard*, at 890; *Seattle-First Nat'l Bank v. Westwood Lumber, Inc.*, 65 Wn. App. 811, 822, 829 P.2d 1152, *review denied*, 120 Wn.2d 1010 (1992).

> When a conditional contract is not specific in its details, the liability of the guarantor has been held to be conditioned upon the exercise of diligence by the creditor to promote payment by the debtor. Reasonable diligence requires that the creditor demand payment from the debtor and give notice of default to the guarantor; and if the creditor fails to do so, he may be barred from recovery.

(Footnotes omitted.) 38 Am. Jur. 2d *Guaranty* § 108 (1968). Thus, the creditor's covenant of good faith is to diligently pursue collection of the debt, and the guarantor may be relieved of liability on the debt where the creditor does not exercise due diligence in collection of that debt. The duty of good faith and fair dealing under a guaranty contract is limited to performance of the provision of that contract and the basic loan contract upon which it is based.[5] Because the

---

[5]The Millers rely on *National Bank v. Equity Investors*, 81 Wn.2d 886, 506 P.2d 20 (1973), *adhered to after remand*, 83 Wn.2d 435, 518 P.2d 1072 (1974), *rev'd in*

Millers have not alleged any breach of the provisions of the guaranty contract, and their liability to the IRS arises out of the Internal Revenue Code and not the guaranty, they have failed to establish as a matter of law a breach of the covenant of good faith under the guaranty contract.

### Fiduciary Duty

The Millers next claim that U.S. Bank breached a fiduciary duty under AFV-83's loan contract. They argue that U.S. Bank's inappropriate control of AFV-83 was a breach of a fiduciary duty and is an adequate basis for their claim.

Breach of a fiduciary duty imposes liability in tort. Restatement (Second) of Contracts § 193 (1981); *Tedvest Agrinomics VI v. Tedmon Properties V*, 49 Wn. App. 605, 607, 744 P.2d 648 (1987). In order to prevail the Millers "must establish: (1) the existence of a duty owed [to them]; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach was the proximate cause of the injury." *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992). Whether a legal duty exists is a question of law. *Hansen*, at 479. Where the facts are not in dispute, as here, once it is determined that a duty is owed to the plaintiff, the court then determines whether the facts qualify as that defined duty, and whether there was a breach. *See Interstate Prod. Credit Ass'n v. MacHugh*, 61 Wn. App. 403, 411, 810 P.2d 535 (1991).

As a matter of law, a guarantor cannot rely upon the relationship between a lender and a borrower to create a fiduciary duty running from the lender to the guarantor. The general rule in Washington is that a lender is not a fiduciary

---

*part after remand,* 86 Wn.2d 545, 546 P.2d 440 (1976), which was a lender suit against the guarantors. The *Equity Investors* court stated "[o]utside the contract, the major duty which a . . . lender owes to any other party is the duty of good faith; though a loan may be inefficiently managed and with adverse consequences, neither inferior lienors nor absolute guarantors have any recourse against the lender unless it is alleged and proved that the lender acted in bad faith." *Equity Investors*, at 920. We harmonize *Equity Investors* with other case law and read the court's statement to mean that outside the provisions of the guaranty contract the major duty that a lender owes to a guarantor is the performance of the loan contract provisions in good faith.

of its borrower; a special relationship must develop between a lender and a borrower before a fiduciary duty exists. *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wn. App. 456, 656 P.2d 1089 (1982); *Liebergesell v. Evans*, 93 Wn.2d 881, 613 P.2d 1170 (1980); *Hutson v. Wenatchee Fed. Sav. & Loan Ass'n*, 22 Wn. App. 91, 588 P.2d 1192 (1978), *review denied*, 92 Wn.2d 1002 (1979). A quasi-fiduciary relationship may exist where the lender has superior knowledge and information, the borrower lacks such knowledge or business experience, the borrower relies on the lender's advice, and the lender knew the borrower was relying on the advice. *Tokarz*, at 460.

The Millers have cited no authority supporting the proposition that a fiduciary relationship exists between a lender and a guarantor. The authorities the Millers do cite are not on point. *In re Ludwig Honold Mfg. Co.*, 46 Bankr. 125 (Bankr. E.D. Pa. 1985), *In re Beverages Int'l Ltd.*, 50 Bankr. 273, 281-82 (Bankr. D. Mass. 1985), Restatement (Second) of Agency § 14, comment *a* (1958), and the quotation from E. Mannino, *Lender Liability and Banking Litigation* § 6.03[4], at 6-15 (1991) all stand for the proposition that where a lender exercises dominion and control over the decision-making processes of a debtor, it may be treated as a fiduciary of the debtor. They do not deal with the relationship of lenders to guarantors.

Whether or not there was a fiduciary relationship between U.S. Bank and AFV-83 is irrelevant because the Millers may not independently assert the principal debtor's claims against the lender. Arguably, the standard for creating a fiduciary duty between a guarantor and a lender will be even more difficult to meet since there is generally no regular, ongoing relationship between them; the loan contract only involves the lender and its borrower, the guarantor's principal. The Millers have not asserted any facts which would give rise to a special relationship under the guaranty contract. They have not shown that within the guaranty relationship, U.S. Bank had superior knowledge or expertise, that they relied upon U.S. Bank's expertise, or that U.S. Bank knew the Millers relied upon it. In fact, Mr. Miller confirmed at his deposition

that neither he nor the principal debtor relied upon U.S. Bank for anything in running AFV-83's business. Thus, this record contains no evidence that U.S. Bank's alleged inappropriate control over AFV-83 created a basis for a fiduciary relationship between the Millers and the Bank. The court appropriately dismissed the Millers' claim.

### Tortious Interference

The Millers next claim that U.S. Bank tortiously interfered with Roger Miller's business expectancies and they were thereby injured. They argue that they expected that AFV-83 would pay its payroll tax obligation to the IRS and since U.S. Bank prevented the payment U.S. Bank should be liable to them.

 Washington does not recognize a cause of action for tortious interference by a guarantor against a lender which is dependent solely upon the lender's actions toward the principal debtor. The Washington Supreme Court has recognized five elements necessary to make a claim for tortious interference with a contractual relationship or business expectancy:

1. The existence of a valid contractual relationship or business expectancy [with a third party];
2. That defendants had knowledge of that relationship;
3. An intentional interference inducing or causing a breach or termination of the relationship or expectancy;
4. That defendants interfered for an improper purpose or used improper means; and
5. Resultant damages.

*Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 137, 839 P.2d 314 (1992) (quoting *Sintra, Inc. v. Seattle*, 119 Wn.2d 1, 28, 829 P.2d 765, *cert. denied*, 121 L. Ed. 2d 598 (1992)); *McGowan v. Pillsbury Co.*, 723 F. Supp. 530, 539 (W.D. Wash. 1989).

Here, the Millers do not claim tortious interference with AFV-83's contractual relationships or business expectancies. Even if this court were to recognize the existence of a duty between U.S. Bank and the Millers, the Millers have failed

to establish a breach. They admit that the factual basis of their claim is U.S. Bank's conduct toward the principal borrower. This is insufficient. The Millers must establish some direct interference by U.S. Bank in a business expectancy or relationship of the Millers. The IRS assessment against the Millers was not the result of a contractual relationship between the Millers and the IRS; it was a civil penalty. Thus, because no such business expectancy or relationship existed there was no interference.[6]

We affirm.

KENNEDY and AGID, JJ., concur.

---

[6]We note that the Millers allege a business expectancy between Mr. Miller and AFV-83. However, since Miller was a partner in American Boat and American Boat was the general partner in AFV-83, we decline to find a business expectancy between Miller and himself.