# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DAPHNE TOMCHAK,

           Appellant,

           v.

CHARLES GREENBERG, aka
TRIAD LAW GROUP, LLC,

           Respondents.

No. 73692-2-I

DIVISION ONE

UNPUBLISHED

FILED: August 1, 2016

Cox, J. – Daphne Tomchak appeals the summary judgment dismissal of her Consumer Protection Act (CPA) and breach of fiduciary duty claims against her former attorney, Charles Greenberg. Because Tomchak failed to establish any genuine issues of material fact, we affirm.

On August 21, 2012, Tomchak, an architect, signed a retainer agreement with Greenberg's law firm, Triad Law Group, to represent her in a contract dispute. The agreement listed Greenberg's hourly rate as $250 and that of a junior associate, Wesley Foreman, as $200. The agreement also provided that "fees and costs will be billed on a monthly basis."

Triad filed Tomchak's complaint on September 11, 2012. Foreman prepared the complaint and discovery requests, under Greenberg's supervision.

The parties to that litigation agreed to engage in mediation, and on October 22, 2012, Foreman began preparing a mediation brief. On November

14, 2012, Tomchak e-mailed Foreman a four-page document entitled "Outline for Mediation" in which she summarized some of the facts related to the contract dispute. It appears that Foreman e-mailed Tomchak a draft version of the brief on November 21, 2012. However, the draft is not included in the record. Tomchak expressed dissatisfaction that Foreman had failed to include information that she believed was critical to her case. Triad submitted the final mediation brief on November 27, 2012.

Tomchak also expressed concern about the expense of both Greenberg and Foreman attending the mediation. Greenberg advised Tomchak that Foreman's presence was necessary because he had done a significant amount of work on the case.

Both Greenberg and Foreman participated in the mediation on November 29, 2012. Tomchak agreed to accept $102,500 in satisfaction of her claims.

On December 21, 2012, Greenberg received the check for the settlement amount and deposited it into the firm's trust account. On January 2, 2013, Greenberg received the invoice for the mediator's services. He e-mailed Tomchak and informed her that he would disburse the settlement proceeds to her after paying her share of the mediation expenses.

Triad ultimately billed Tomchak a total of $14,048.10. Triad's billing system automatically generates monthly billing statements for clients. The record contains statements showing Triad billed $950.00 for August, $3,726.49 for September, $1,550.00 for October, $7,600.00 for November, $171.61 for

December, and $50.00 for January. Tomchak asserted that she did not receive any monthly billing statements after October.

Shortly after Tomchak received the bill for mediation expenses, she began expressing further dissatisfaction with how Triad had handled her case. She disputed the mediation expenses, alleging the mediator had inflated the number of hours spent, and refused to authorize Greenberg to pay the invoice out of the settlement proceeds. She also contended that Greenberg had charged her for duplicative or unnecessary services, including the failure to use her outline as the mediation brief and the attendance of two attorneys at mediation. On January 8, 2013, Greenberg sent Tomchak an e-mail offering to reduce Triad's bill by $500, to $13,998.10. Tomchak did not respond until January 30, 2013, when she sent an e-mail stating "My apologies for not responding earlier . . . This seems fine to me." Greenberg ultimately issued the check for the settlement proceeds, minus Triad's costs and fees, on February 7, 2013.

On November 7, 2014, Tomchak commenced this action against Greenberg, alleging a violation of the CPA and breach of contract. Tomchak's claims were based on the allegations that Greenberg (1) never provided her with monthly billing statements as agreed; (2) overcharged her for services; and (3) delayed disbursing the settlement proceeds. Greenberg moved for summary judgment dismissal of the complaint. In response, Tomchak raised a new claim

of breach of fiduciary duty.[1] The trial court granted Greenberg's motion for summary judgment.

Tomchak appeals.

A defendant may move for summary judgment by showing that there is an absence of evidence to support the plaintiff's case.[2] If the defendant shows an absence of evidence to establish the plaintiff's case, the burden then shifts to the plaintiff to set forth specific facts showing a genuine issue of material fact for trial.[3] While we construe all evidence and reasonable inferences in the light most favorable to the nonmoving party, if the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is proper.[4] The plaintiff may not rely on mere speculation or unsupported assertions, facts not contained in the record, or inadmissible hearsay.[5] This court

---

[1] Tomchak has subsequently abandoned her breach of contract claim.

[2] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225-26 n.1, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).

[3] Id. at 225.

[4] Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002); Young, 112 Wn.2d at 225 (quoting Celotex, 477 U.S. at 322).

[5] Higgins v. Stafford, 123 Wn.2d 160, 169, 866 P.2d 31 (1994).

reviews de novo summary judgment rulings.[6] We review the denial of a motion for reconsideration for abuse of discretion.[7]

## CONSUMER PROTECTION ACT

Washington's CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."[8] To prevail on a CPA claim, a plaintiff must prove (1) the defendant engaged in an unfair or deceptive act or practice, (2) the act occurred in trade or commerce; (3) the act affects the public interest; (4) the plaintiff suffered injury to his business or property; and (5) the injury was causally related to the act.[9] The failure to establish any one of these elements is fatal to the claim.[10]

Tomchak fails to set out sufficient facts establishing a public interest impact, the third element of a CPA claim. Where, as here, the dispute arises from a private contract negotiation, not a business-consumer relationship, a plaintiff alleging a CPA violation must demonstrate that other individuals have been or will be injured in exactly the same fashion.[11] There must be shown "a

---

[6] Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601, 200 P.3d 695 (2009).

[7] Rivers v. Washington State Conf. of Mason Contractors, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002).

[8] RCW 19.86.020.

[9] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[10] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., 162 Wn.2d 59, 74, 170 P.3d 10 (2007).

[11] Hangman Ridge, 105 Wn.2d at 790.

real and substantial potential for repetition," as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated.[12] Relevant but non-dispositive factors include (1) whether the alleged acts were committed in the course of the defendant's business; (2) whether the defendant advertised to the public in general; (3) whether the defendant actively solicited the plaintiff's business; and (4) whether the plaintiff and defendant occupied unequal bargaining positions.[13]

Here, Tomchak failed to establish any acts or practices that had the capacity to deceive other members of the public. Of particular note is the fact that Tomchak presented no evidence that Greenberg advertised to the public or actively solicited an attorney-client relationship with her. In fact, Tomchak stated "I interviewed several potential attorneys to represent me . . . I chose [Greenberg] because he agreed to an hourly fee."

Moreover, Tomchak does not establish the parties had unequal bargaining power. Tomchak was an architect familiar with billing practice. She was not "representative of bargainers subject to exploitation and unable to protect themselves."[14]

Finally, Tomchak fails to demonstrate that Greenberg regularly billed clients for unnecessary work, failed to send monthly billing statements or delayed

---

[12] Id.

[13] Id. at 790-91.

[14] Id. at 794.

issuing funds. Rather, the dispute between Tomchak and Greenberg arose from a unique set of facts.

Tomchak argues that Greenberg's actions were not an isolated incident because he had prior disciplinary history involving billing irregularities. The record shows that in 1998, Greenberg received a reprimand for several incidents in 1990 and 1991 when Greenberg switched the initials on billing statements from those of a more junior associate to his own. But that is not what happened in this case. Tomchak does not allege that Greenberg took credit for work performed by Foreman in order to bill her at a higher rate. In fact, one of Tomchak's primary complaints is that much of the work on her case was performed by Foreman rather than Greenberg.

Even accepting the material allegations of the complaint as true, Tomchak has not pleaded sufficient facts to establish the public interest element of a CPA violation. The trial court properly dismissed Tomchak's CPA claim.

## BREACH OF FIDUCIARY DUTY

The essential elements to pleading a breach of fiduciary duty are: (1) that a fiduciary relationship existed which gave rise to a duty of care on the part of the defendant to the plaintiff; (2) that there was an act or omission by the fiduciary in breach of the standard of care; (3) that plaintiff sustained damages; and (4) that the damages were proximately caused by the fiduciary's breach of the standard

7

of care.[15] A fiduciary relationship arises as a matter of law between an attorney and a client.[16]

The Rules of Professional Conduct (RPC) generally outline an attorney's fiduciary duties.[17]

Tomchak contends that Greenberg breached his fiduciary duty to promptly disperse funds. Tomchak cites RPC 1.15A(f) and (g), which provide:

(f) Except as stated in this Rule, a lawyer must promptly pay or deliver to the client or third person the property which the client or third person is entitled to receive.

(g) If a lawyer possesses property in which two or more persons (one of which may be the lawyer) claim interests, the lawyer must maintain the property in trust until the dispute is resolved. The lawyer must promptly distribute all undisputed portions of the property. The lawyer must take reasonable action to resolve the dispute, including, when appropriate, interpleading the disputed funds.

Tomchak fails to demonstrate that Greenberg breached his fiduciary duty to her. Shortly after mediation, Tomchak began disputing the amount she owed Greenberg, including the costs of mediation. In accordance with RPC 1.15A(g), Greenberg maintained Tomchak's settlement proceeds in his trust account until he and Tomchak reached a resolution. Once they did so, Greenberg issued a check to Tomchak from his trust account approximately a week later.

---

[15] Miller v. U.S. Bank of Washington, N.A., 72 Wn. App. 416, 426, 865 P.2d 536 (1994).

[16] Liebergesell v. Evans, 93 Wn.2d 881, 890, 613 P.2d 1170 (1980).

[17] Eriks v. Denver, 118 Wn.2d 451, 457, 824 P.2d 1207 (1992).

Nor does Tomchak establish any damages resulting from Greenberg's alleged late disbursement. Tomchak contends that because she ultimately received her settlement check in 2013 instead of 2012, the delay had "serious tax consequences for me." But Tomchak does not articulate what those tax consequences were or how she was injured thereby. Nor does Tomchak show that Greenberg's actions were a cause of such injury. It is unlikely that Tomchak could have received the settlement proceeds during 2012 under any circumstances, given that the funds were not available to Greenberg until December 21 and Tomchak began disputing Greenberg's billing soon afterward. Tomchak fails to establish a genuine issue of material fact as to her breach of fiduciary duty claim.

Tomchak also failed to establish any of the grounds under CR 59(a) justifying a reconsideration of the trial court's order. The trial court did not abuse its discretion in denying reconsideration.

We affirm the summary judgment order.

Cox, J.

WE CONCUR:

Trickey, ACJ

Becker, J

9