# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SAFE ACQUISITION, LLC, a Washington corporation; LUCIDY, LLC, a Washington corporation; and SCOTT FONTAINE, an individual, | No. 77507-3-I |
| Appellants, | DIVISION ONE |
| | UNPUBLISHED OPINION |
| v. | |
| GF PROTECTION INC., d/b/a GUARDIAN FALL PROTECTION, a Washington corporation, | |
| Respondent. | FILED: March 25, 2019 |

APPELWICK, C.J. — SAFE sued GFP, alleging that GFP breached the parties' contracts in failing to market and sell SAFE's products. In the ongoing litigation, SAFE moved to strike a contractual provision between GFP and its former president, Marquardt, barring Marquardt from assisting SAFE in its lawsuit. The trial court denied the motion. After the discovery period ended, SAFE moved for an order to compel GFP to produce documents relating to the sale of its company and "to produce" GFP's alleged owner for a deposition. The trial court denied the motion. We affirm the order denying SAFE's motion to strike, and decline to grant discretionary review of the order denying SAFE's motion to compel GFP to produce documents.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SAFE ACQUISITION, LLC, a Washington corporation; LUCIDY, LLC, a Washington corporation; and SCOTT FONTAINE, an individual, | No. 77507-3-I |
| Appellants, | DIVISION ONE |
| | UNPUBLISHED OPINION |
| v. | |
| GF PROTECTION INC., d/b/a GUARDIAN FALL PROTECTION, a Washington corporation, | |
| Respondent. | FILED: _____ |

APPELWICK, C.J. — SAFE sued GFP, alleging that GFP breached the parties' contracts in failing to market and sell SAFE's products. In the ongoing litigation, SAFE moved to strike a contractual provision between GFP and its former president, Marquardt, barring Marquardt from assisting SAFE in its lawsuit. The trial court denied the motion. After the discovery period ended, SAFE moved for an order to compel GFP to produce documents relating to the sale of its company and "to produce" GFP's alleged owner for a deposition. The trial court denied the motion. We affirm the order denying SAFE's motion to strike, and decline to grant discretionary review of the order denying SAFE's motion to compel GFP to produce documents.

## FACTS

SAFE Acquisition LLC and Lucidy LLC (hereafter collectively called SAFE) are companies Scott Fontaine created to patent certain construction products he invented. In August 2013, SAFE signed contracts with GF Protection Inc. (GFP) for GFP to manufacture, market, and sell the products in exchange for royalty payments to SAFE.

SAFE sued GFP in June 2016, alleging that GFP breached the license agreements by failing to make reasonable efforts to market and sell the products. GFP discovered that its former president, Edward Marquardt, was actively sending e-mails to SAFE, leading GFP to subpoena Marquardt for a deposition. Due to scheduling conflicts, Marquardt chose the deposition date of August 7, 2017, the last day of discovery.

Near the end of the deposition on August 7, SAFE asked Marquardt to confirm that he had "signed some sort of agreement" with GFP. Marquardt acknowledged that he was bound by an agreement with GFP, restricting him from discussing confidential information that he was "exposed to during [his] tenure there as an employee." During the deposition, GFP's counsel stated,

> I'll allow you to ask . . . about terms of the settlement agreement with Mr. Marquardt which impact this litigation, but if you want to talk about, you know, the terms of, other terms of settlement of dispute between Guardian and Mr. Marquardt, that's off limits by the court's order.

After Marquardt stated that he was restricted from "talking about anything confidential," SAFE affirmed that GFP was going to provide the pertinent clauses and moved to a different subject.

Within three days following the deposition, GFP provided SAFE with the relevant provision from the settlement agreement with Marquardt. GFP did not provide the entire agreement, because it felt that the remainder was outside the scope of discovery.

The provision states,

"Other Litigation. Marquardt agrees that he shall not assist, directly or indirectly, SAFE, Lucidy, or Scott Fontaine in separate litigation or other proceeding adverse to GFP and/or its officers and directors. For purposes of this agreement, assist includes, but is not limited to, providing advice, information, and serving as a witness. Marquardt may respond to a properly served and noticed subpoena by making statements in a deposition pursuant to such subpoena or producing documents in direct response to such subpoena. Marquardt shall provide no assistance to this litigation voluntarily, or without notice to GFP consistent with the rules governing subpoenas. This paragraph does not diminish or lessen Marquardt's ongoing obligations to not disclose Confidential Information to competitors such as SAFE, as further set forth in a paragraph II(D), above."

(Boldface omitted.)

On August 11, 2017, GFP executed an equity purchase agreement with buyer Gemini Acquisition Corporation (Gemini). Under the agreement, Gemini acquired the patent license agreements between SAFE and GFP. On August 25, 2017, SAFE asked GFP to produce documents and information about the sale of the license agreements. GFP agreed to provide a redacted version of the equity purchase agreement to confirm the transfer of the contracts and to show what rights and liabilities GFP retained regarding this litigation.

Unsatisfied with the redacted documents, on September 7, 2017, SAFE moved the trial court to compel GFP to produce (1) a complete, unredacted copy of the equity purchase agreement, (2) copies of all communications and other

documents relating to this acquisition and the licensed products and/or SAFE, and (3) Darrin Erdahl[1] for a two hour deposition regarding the details of the acquisition as it relates to SAFE and the licensed products. The trial court denied the motion, stating, "The documents and communications [SAFE] seek[s] are beyond the scope of their discovery requests, not relevant to the claims and issues in this case, and [SAFE has] failed to establish good cause to conduct additional discovery after the discovery cutoff."

On September 8, 2017, SAFE moved to strike GFP's contract provision prohibiting Marquardt from "assisting" SAFE in the lawsuit. In denying the motion, the trial court stated, "To the extent that someone might interpret the contractual prohibition as prohibiting Ed Marquardt from answering a subpoena to testify at trial, the court finds that it does not do so."

SAFE sought discretionary review of the order denying the motion to strike GFP's contract provision prohibiting Marquardt from assisting SAFE in this lawsuit. Review was granted. It also seeks review of the order denying its motion to compel GFP to produce the complete equity purchase agreement, related documents, and the Erdahl deposition.[2]

---

[1] SAFE alleges that Erdahl is the owner of GFP and replaced Marquardt as president, after Marquardt was fired. In its answer, GFP did not confirm that Erdahl was the owner or the president, but admitted that Marquardt was fired. In his declaration, Erdahl refers to himself as the "chairman of GF Transition Inc., formerly known as [GFP]."

[2] Commissioner Neel granted review of the order denying the motion to strike, but referred to the court to decide if it will grant discretionary review of the order denying SAFE's motion to compel production.

DISCUSSION

SAFE makes two arguments. First, it argues that the trial court erred in denying its motion to strike the "non-cooperation clause" in Marquardt's settlement agreement with GFP. Second, it argues that the trial court erred in denying its motion to compel GFP to produce relevant documents about the sale of GFP.

I. Motion to Strike Noncooperation Clause

SAFE argues first that the trial court erred in upholding a noncooperation clause in Marquardt's settlement agreement with GFP. It contends that the "restriction barring Mr. Marquardt from 'assisting' or 'serving as a witness' for [SAFE] contravenes public policy because it interferes with the free and fair administration of justice, and allows one party to restrict access of the other party to a key witness."

A. Standard of Review and Standing

The parties disagree over the proper standard of review. SAFE argues that, because it is "purely a question of law," this court should review de novo whether the noncooperation clause violates public policy. GFP argues that, because "the motion to strike sought discovery," this court should determine whether the trial court abused its discretion "[i]n declining to invalidate a contract in which [SAFE was] not a party."

Appellate courts determine legal issues de novo. Island County v. State, 135 Wn.2d 141, 160, 955 P.2d 377 (1998). And, this court reviews the trial court's conclusions of law pertaining to contract interpretation de novo. Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712, 334 P.3d 116 (2014).

An appellate court reviews a trial court's discovery order for an abuse of discretion. T.S. v. Boy Scouts of Am., 157 Wn.2d 416, 423, 138 P.3d 1053 (2006). We will find an abuse of discretion only on a clear showing that the court's exercise of discretion was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. Id.

At the outset, GFP asserts, as it did below, that SAFE does not have standing to challenge Marquardt's settlement agreement with GFP.

The doctrine of standing prohibits a litigant from asserting another's legal right. Miller v. U.S. Bank of Wash., N.A., 72 Wn. App. 416, 424, 865 P.2d 536 (1994). A contract can be enforced only against those party to it. Gall v. McDonald Indus., 84 Wn. App. 194, 201, 926 P.2d 934 (1996). Dismissal of a contract action is proper when the litigant is not a party to the contract and thus lacks standing. West v. Thurston County, 144 Wn. App. 573, 576, 183 P.3d 346 (2008).

SAFE contends that it has standing under the Uniform Declaratory Judgment Act (UDJA), chapter 7.24 RCW. The UDJA permits a party to bring an action to determine the validity of a contract, among other instruments, as long as that party's rights, status, or other legal relations are affected by the instrument in question. RCW 7.24.020. In order to have standing to seek declaratory judgment under the Act, a person must present a justiciable controversy: (1) an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or

academic, and (4) a judicial determination of which will be final and conclusive. Branson v. Port of Seattle, 152 Wn.2d 862, 877, 101 P.3d 67 (2004).

SAFE is not a party to the contract. Marquardt, who is the subject of the challenged provision in the contract, is not a party to this lawsuit. SAFE did not seek a declaratory judgment below. Instead, it moved "to strike" the provision of GFP's settlement agreement with Marquardt that "prohibits" Marquardt from assisting SAFE in the litigation. In its motion, SAFE asked the trial court to hold that, because it violated public policy, the provision "should be declared invalid" so that it could not be used to prevent Marquardt from participating in SAFE's litigation with GFP.

The trial court interpreted the agreement provision as allowing Marquardt to testify. As a result, the trial court did not need to, and did not address, the questions of whether the language had to be stricken and whether SAFE had standing to challenge it. The issue before this court is the correctness of the trial court's interpretation of the contractual language. The proper standard of review is de novo.

B. Public Policy

SAFE alleges that the contractual clause violates public policy and the fair administration of justice. It asserts that the provision "allows one party to restrict access of the other party to a key witness." SAFE further claims that the trial court "sanctioned witness tampering" in approving the clause. (Boldface omitted.)

As a matter of law, contract terms are unenforceable on grounds of public policy when the interest in its enforcement is clearly outweighed by a public policy

7

against the enforcement of such terms. LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 48, 85, 331 P.3d 1147 (2014). In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy. State Farm Gen. Ins. Co. v. Emerson, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984).

In denying SAFE's motion to strike, the trial court stated, "To the extent that someone might interpret the contractual prohibition as prohibiting Ed Marquardt from answering a subpoena to testify at trial, the court finds that it does not do so." SAFE argues that, in interpreting the clause in this matter, the trial court engaged in inappropriate "blue-lining" of the contract.

The original provision states,

> Marquardt agrees that he shall not assist, directly or indirectly, SAFE, Lucidy, or Scott Fontaine in separate litigation or other proceeding adverse to GFP and/or its officers and directors. For purposes of this agreement, assist includes, but is not limited to, providing advice, information, and serving as a witness. Marquardt may respond to a properly served and noticed subpoena by making statements in a deposition pursuant to such subpoena or producing documents in direct response to such subpoena. Marquardt shall provide no assistance to this litigation voluntarily.

Because the clause states that Marquardt is free to respond to a subpoena, the trial court did not improperly alter the provision in its interpretation.

Citing Wright v. Grp. Health Hosp., 103 Wn.2d 192, 691 P.2d 564 (1984), SAFE asserts that, "If a party cannot bar its current employees from cooperating in litigation against it, it cannot bar its former employees either."

In Wright, the issue before the court was whether a defendant hospital corporation may prohibit its current employees from conducting ex parte interviews

with plaintiffs' attorneys. Id. at 193. The court held that current employees authorized to speak for a corporation would be considered "parties" with whom opposing counsel could not speak ex parte. Id. at 196, 200-01. But, it held that opposing counsel could interview employees of the corporation ex parte so long as such employees were not authorized to speak for the corporation or in a management status. Id. at 202-03. And, it held that "[s]ince former employees cannot possibly speak for the corporation," opposing counsel could also interview them ex parte. See id. at 201. The court emphasized, "This opinion shall not be construed in any manner, however, so as to require an employee of a corporation to meet ex parte with adverse counsel. We hold only that a corporate party, or its counsel, may not prohibit its nonspeaking/managing agent employees from meeting with adverse counsel." Id. at 203 (emphasis in original).

Because an employee or former employee is not required to agree to speak with adverse counsel, the employee is free to decline to do so voluntarily. Logically, the employee is also free to agree with the employer/former employer that they will decline to engage in that communication voluntarily. There is no evidence in the record that Marquardt did not voluntarily enter into the settlement agreement in which he agreed not to communicate voluntarily with SAFE. GFP did not unilaterally block SAFE's access to Marquardt. This does not violate the policy articulated in Wright.

Here, the clause at issue explicitly states that "Marquardt may respond to a properly served and noticed subpoena by making statements in a deposition pursuant to such subpoena or producing documents in direct response to such

9

subpoena." GFP did not block SAFE's access to Marquardt, as it claims. He is free to testify pursuant to a subpoena, at which time counsel for GFP would be present to object to any disclosure of confidential information or information protected by the attorney-client privilege.

Because the provision at issue does not bar Marquardt's participation in the underlying proceeding, it does not offend public policy, or contravene the holding of Wright. There was no legal error, and the trial court did not err in denying the motion. We affirm the order denying SAFE's motion to strike.

## II. Motion to Compel Production

SAFE argues second that the trial court erred in denying its motion to compel relevant documents about the sale of GFP and SAFE's licenses. It asserts that this court should grant review of this issue and reverse the trial court's decision. This court accepts discretionary review only in the following circumstances:

> (1) The superior court has committed an obvious error which would render further proceedings useless;
>
> (2) The superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act;
>
> (3) The superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court; or
>
> (4) The superior court has certified, or that all the parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.

RAP 2.3(b).

A discovery order of the trial court is reviewable only for an abuse of discretion, which exists only when no reasonable person would have decided the way the judge did. Howell v. Spokane & Inland Empire Blood Bank, 117 Wn.2d 619, 629, 818 P.2d 1056 (1991).

SAFE makes three arguments for why the trial court abused its discretion in denying its motion. First, it argues that the trial court erred in concluding that the sale is "beyond the scope of [its] discovery requests," because the "discovery deadline is not a valid reason for the trial court to have permitted [GFP] to refuse basic discovery." But, in stating that the request was beyond the scope of SAFE's discovery requests, the trial court did not rely on the discovery deadline. It found that GFP's sale agreement was beyond the scope of information SAFE sought in its production requests. The sale occurred well after filing the lawsuit and became known to SAFE after the close of the discovery period. SAFE could not have knowingly included discovery requests about the sale within the deadline.

The trial court did not commit obvious or probable error necessitating discretionary review by denying the motion on the basis that the material was beyond the scope of the discovery requests made.

SAFE argues next that the trial court erred in concluding that the information sought was "not relevant to the claims and issues in this case." SAFE argues that it sought documents related to the sale of the licenses "that are at the center of this litigation and expressly mention either Plaintiffs or their licensed products."

11

In its motion, SAFE moved to compel GFP to produce (1) a "complete, unredacted copy of the Equity Purchase Agreement;" (2) "copies of all communications and other documents relating to this acquisition and the Licensed Products and/or Plaintiffs in this case;" and (3) "Darrin Erdahl for a two-hour deposition . . . regarding the details of this acquisition as it relates to the Plaintiffs and the Licensed Products." It did not ask the trial court for an in camera review of the documents.

But, SAFE alleged in its complaint that GFP—not Gemini—breached the contracts and owes damages. SAFE has not established that further information about the equity purchase agreement is relevant to determine whether breach of contract occurred nor any damages caused by the alleged breach.

The trial court did not commit obvious or probable error necessitating discretionary review by denying the motion on the basis of relevance.

SAFE argues third that the trial court erred in concluding that SAFE "'failed to establish good cause to conduct additional discovery.'" It contends, "There was (and is) no trial date set; there would have been no (and is no) prejudice to GFP; Plaintiffs had been diligent and could not possibly have foreseen the need for additional discovery earlier; and the information sought is plainly relevant."

The GFP sale was not made known to SAFE until August 23, too late to have been a specific focus of discovery. And, the trial court ruled the agreement was outside the scope of the discovery actually sought. So, permission from the court was required for additional discovery. See Buhr v. Steward Title of Spokane, LLC, 176 Wn. App. 28 34, 308 P.3d 712 (2013) ("[T]he rule contemplates a court

order establishing a plan and schedule for discovery. A schedule for discovery may be altered or amended 'whenever justice so requires'" (quoting CR 26(F))). However, a September trial date was in place when the motion for additional discovery was made. The trial date was stayed pending this appeal.

SAFE asserted that it needed to know the parties at issue and "whether GFP . . . will be able to satisfy any judgment against it, including a judgment terminating the licenses." It also raised the valuation of the licenses as an example of a document that was relevant, implying that it had a right to see the sale agreement on that premise. It is clear from the redacted equity purchase agreement that GFP retained all liability and assets with respect to this litigation. And, as for SAFE's concern about valuation, the Erdahl declaration states that SAFE's contracts were not separately valued as part of the transaction between GFP and Gemini, and had no independent impact on the purchase price. If the information in the declaration were in doubt, SAFE could have requested in camera review by the trial court. It did not. No other information in the record suggests the declaration is not true. In addition, SAFE does not show how this information would inform whether GFP breached its contract or the amount of any damages related to that breach. The court need not address whether production would prejudice GFP.

The trial court did not commit obvious or probable error necessitating discretionary review by denying the motion on the basis of lack of a showing of good cause.

We decline to grant discretionary review on the trial court's order denying SAFE's motion to compel GFP to produce documents.

III.     Attorney Fees

GFP requests that this court award it attorney fees "under CR 37(b) and the fee provision in the contracts at issue." GFP does not cite to the record for the fee provision in the contracts. Because this provision does not appear to be in the record before this court, we cannot review it.

A trial court has broad discretion under CR 37 to impose sanctions for noncompliance with a discovery order. Rhinehart v. KIRO, Inc., 44 Wn. App. 707, 710, 723 P.2d 22 (1986). But, this court has denied a party's fee request for defending an appeal, where the appeal is "without merit but not one that this court deem[s] frivolous or interposed to harass or for purposes of delay." Id. at 711. In line with the reasoning in Rhinehart, we decline to grant fees to GFP, as this appeal is not frivolous or designed to harass or to delay.

We affirm the order denying SAFE's motion to strike and decline to grant discretionary review of the order denying SAFE's motion to compel.

WE CONCUR:

14